JOHNSON, Commissioner of Immigration, v. TERTZAG.

Ex parte SOGHANALIAN.

(Circuit Court of Appeals, First Circuit. November 5, 1924.)

No. 1682.

1. Aliens ⬤⟳54—Alien held entitled to admission as fugitive from religious persecution.

Uncontradicted evidence *held* to entitle an Armenian woman to admission as one seeking entry to avoid religious persecution.

2. Aliens ⬤⟳54—Failure to inform immigrant of rights held denial of fair hearing.

Failure to inform an immigrant of her right to exemption from the literacy test as one seeking admission to avoid religious persecution, or to consider such exemption, *held* a denial of a fair hearing, and also an error of law, which gives the courts jurisdiction.

3. Aliens ⬤⟳54—Immigration officials may not ignore essential provisions of statute.

Immigration officials may not ignore essential parts of the statutes they are administering, and it is as much their duty to admit aliens exempted from the general policy of exclusion as it is to exclude those falling within the excluded classes.

Appeal from the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Petition of Jacob Tertzag, on behalf of Ossana Soghanalian, against John P. Johnson, Commissioner of Immigration, for writ of habeas corpus. From a decree granting the writ, respondent appeals. Affirmed.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass. (Robert O. Harris, U. S. Atty., of Boston, Mass., on the brief), for appellant.

Jacob Tertzag, of Boston, Mass., pro se.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is an appeal by the Commissioner of Immigration from a decree holding, on habeas corpus, that Ossana Soghanalian is entitled to admission to the United States as an alien Armenian fleeing to the United States to escape religious persecution.

Before taking up the merits, the record before us calls for disapproving comment. It covers 38 pages, most of which has no proper place in a record for this court. The *real* evidence covers 4 pages. The opinion of the District Court is printed twice. An affidavit of the alien's brother (not evidence) appears, with slight changes, three times. A large part of the residue consists of correspondence as to irrelevant procedural matters. But we search in vain to ascertain whether the alien was ordered deported to Armenia, her last domicile, or to Paris, or

to Marseilles, the port of immediate departure. Moreover, in the brief for the appellee, we find a statement that the alien testified before the District Court, but no transcript of her evidence. This is an unwarranted omission. This court should have before it the entire record upon which the District Court based its decision. There is no valid reason why records of cases coming from the Department of Immigration should not present, in orderly, succinct, and adequate form, the evidence and procedural records—and only the evidence and procedural records—upon which the judgment of this court must be based. This court should not be compelled to hunt through a confused and confusing mass of irrelevancies for the evidence and records which must delimit our duty.

The brief and cogent opinion of Judge Brewster in the District Court is as follows:

"The applicant was born in Hadjin, Silesia, Turkey, 27 years ago. Upon arrival in this country on her way to her brother, a merchant in Binghamton, N. Y., she was detained, examined by a Board of Special Inquiry at Boston, was found to be unable to read or write in any language or dialect, and for that reason was excluded. Upon appeal the excluding decision was affirmed.

"The applicant claims exemption from the provisions of the statute barring illiterates, for the reason that she was fleeing to this country to escape religious persecution. The right to claim such an exemption was not brought to her attention, and seems not to have been considered by the immigration authorities. Evidence was offered from which I find that the applicant was of the Christian religion; that she had left Syria with the United States as her destination; that she had been once deported by the Turks, and had been subjected to persecution by them; that she was obliged to leave her home in Hadjin to escape further persecution. If this phase of her case had been fairly considered, or if it had been brought to the attention of the applicant, her claim to exemption might well have been established. The failure to do either of these things constituted, in my opinion, a denial of that fair and impartial hearing to which an alien may be held to be entitled.

"Petition for writ of habeas corpus is granted, and a writ may issue."

[1] The evidence fully warranted the finding of the learned judge that the alien should have been admitted as a fugitive from religious persecution. She testified, without contradiction, that her last permanent residence was Hadjin, Turkey, still under Turkish rule; that the Turks killed her father and mother, and killed or deported all the Christians in Hadjin; that she was seized and kept in a harem for 3½ years, until she was saved by the Allied armies; that, "if the government of the United States sends me back, I will throw myself overboard, as I have no place to go."

On this point her brother testified, also without contradiction: "We were a big family; but the Turks killed them off, and now there is just myself and my sister left of the whole family."

It also appeared that her brother had been an American citizen since 1914; that he owned substantial property in Binghamton, N. Y., and would be fully responsible for his sister's support.

Yet in the face of this uncontradicted evidence the immigration officials excluded her on the ground of illiteracy. On that point she testified that, although she went to school about four years, "when we were deported by the Turks in 1916 to the deserts, and they killed my father and mother, we had gone through so much that I have forgotten all that I learned."

[2] The immigration officials utterly ignored the exemption found in 39 Stat. c. 29, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), as follows:

"Provided * * * that the following classes of persons shall be exempt from the operation of the illiteracy test, to wit: All aliens who shall prove to the satisfaction of the proper immigration officer or to the Secretary of Labor that they are seeking admission to the United States to avoid religious persecution in the country of their last permanent residence. * * *"

This was at least an error of law, which gives the courts jurisdiction. Gegiow v. Uhl, 239 U. S. 3, 9, 36 S. Ct. 2, 60 L. Ed. 114. If we view the conduct of this case somewhat more critically, it was also, as the District Court held, the denial of a fair and impartial hearing.

The case is, on the facts, radically different from United States v. Commissioner (C. C. A.) 288 F. 756, relied upon by the government, where it appears (see page 759) that neither the alien "nor the intended husband, in the testimony before the board, had a word to say as to religious persecution in Roumania." This alien disclosed all essential facts before the board, making a plain case of fleeing from religious persecution.

[3] It is as much the duty of the immigration officials to admit aliens exempted from the general policy of exclusion as it is to exclude those falling within the excluded classes. Administrative officials may not ignore essential parts of the statutes they are administering.

This is a case to which the fundamental principle stated by the Supreme Court in Kwock Jan Fat v. White, 253 U. S. 454, 464, 40 S. Ct. 566, 570 (64 L. Ed. 1010) has peculiar and special application. That court there said, with reference to the power of the immigration officials:

"It is a power to be administered, not arbitrarily and secretly, but fairly and openly, under the restraints of the tradition and principles of free government applicable where the fundamental rights of men are involved, regardless of their origin or race. It is the province of the courts, in proceedings for review, within the limits amply defined in the cases cited, to prevent abuse of this extraordinary power, and this is possible only when a full record is preserved of the essentials on which the executive officers proceed to judgment."

The decree of the District Court is affirmed.