Aron Steuer, J.
This is a motion for leave to reargue, or in the alternative, for permission to allow an appeal from a determination of this court to the Appellate Division. We have decided to grant the alternative relief, not because of any lack of faith in the affirmance of the action taken by the learned Justice of the City Court, but due to two factors of apparently contradictory nature. The question involved is of great importance to many thousands of people. Yet it has never, so far as we can determine, been litigated before.
The facts are as follows: The defendants, in 1948, being desirous of facilitating the entry of their two nephews into the United States as immigrants, gave an assurance to the American Consul abroad. The assurance is in the form of an affidavit and contains this language: ‘ ‘ That we are willing and able to receive, maintain, support the aliens after their immigration to the United States and hereby assume such obligations guaranteeing that none of them will at any time become public charges upon any community in the United States and that any of school age will be sent to school.” The affidavit gives information of the financial worth of the defendants indicating their ability to meet such obligations.
*404 Visas were issued to these two young men following the submission of this affidavit. As to one of them, there is nothing in this action which concerns him. The other has had an unfortunate history. Some two years after his arrival he was committed to Manhattan State Hospital. While there, deportation proceedings were begun on the ground that he was a public charge. These proceedings were discontinued when one of the defendants paid the hospital bill. Some few months thereafter the patient was released to the custody of defendants. They provided him with transportation to California, including money for his needs on the journey. On his arrival he was almost immediately committed to a State hospital where he remained for four years. The action is by the Department of Mental Hygiene of the State of California, the State agency which operated the hospital, and is for the charges incurred by his stay there. The court below granted summary judgment to the defendants. The claim was resisted and judgment granted on several grounds. Only one of these is discussed, because not only is it determinative of the issue between the parties, it is of such general interest and significance that it furnishes the reason for granting this motion. Plaintiff claims that the assurances given in the affidavit, quoted above, constitute a contract. It is conceded by plaintiff that the affidavit assurance is in contract form. As it was given to obviate any question as to whether the alien would become a public charge, a sufficient consideration is apparent. The contention is that despite this no contractual obligation arose because the United States, the so-called other contracting party, did not intend to bind defendants to any future legal obligation. There is and can be no question that the Congress may make any regulations as to the admission of aliens that it sees fit, short of contravening the Constitution. And no question of constitutionality has been raised. The question here is what has the Congress enacted on this particular point. Firstly, it is provided that persons likely to become a public charge, should be denied entry as quota immigrants under the Immigration Act of 1924 (U. S. Code, tit. 8, § 1182, subd. [15]), the statute under which the alien in question was admitted. Just how this provision was to be enforced, with one possible exception, Congress has not legislated, and under the grant to the State Department of general powers for the enforcement and administration of all immigration laws, it has excluded the powers, duties and functions conferred upon the consular officers relating to the granting or refusal of visas (U. S. Code, tit. 8, § 1104). It would appear from this that no right has been conferred upon the State Department ;to make regulations *405 concerning the issuance of visas. This is difficult to accept because, in other connections, for example, in regard to physical examinations in connection with the issuance of visas, consuls are directed to conduct the examination in accordance with such regulations as may be prescribed (U. S. Code, tit. 8, § 1201); so that some officer of some department must have power to make regulations in this connection.
The next question is what regulations have been made. Plaintiff points out that assurances in the same general form have been in use for over 30 years. This, however, begs the question. The extended use of the form is not a guide to the purpose behind that use. The use itself is just as compatible with the theory that the form was employed to lend an air of solemnity to a moral obligation as it is with the theory of contract. However, if a contract is authorized the use of a contract form would be a strong indication that such was intended. In this connection, it is well to note that the defendants do not argue that they were misled into making a contract. Their point is that the consular officer had no right to exact a contract from them, because the United States sought no such contract as a condition for granting a visa. Plaintiff produced no regulation or promulgation of any department. Actually, the record shows that the State Department has consistently refused to take a stand on whether the affidavit is an enforeible agreement, showing that this is a matter for the courts. Also, the State Department has issued a pamphlet of “ General Information Regarding Visas for Immigrants ’ ’ in which it prescribes that a sponsor may submit a statement showing his ability and willingness to contribute to the support of the immigrant. This is quite different from an agreement to supply that support. Also, there is a statutory provision for the posting of a bond where a visa would otherwise be refused for likelihood that the immigrant would become a public charge., (U. S. Code, tit. 8, § 1183.)
Finally, and most persuasive, is the report of a Senate Committee on the Judiciary of April 20, 1950 (Senate Report No. 1515, 81st Cong., 2d Sess.). In discussing whether to give consuls authority to require a bond to be posted, the committee stated that the usual sponsor’s affidavits are moral obligations only and are not enforeible as contracts. There are many similar declarations of policy and interpretation with regard to later special statutes on immigration, notably the displaced persons and refugee relief laws. These are not deemed of value on this application because the acts in question were emergency measures designed in the particular circumstances affected, to relieve against the rigors of the immigration laws. *406 An interpretation by the executive departments of the duties of sponsorship under these laws is of no value in determining the duty under the law of 1924. The report of the Senate Committee above referred to speaks in connection with the law of 1924. Hence it shows what was reported to the Senate and presumably what they understood that law to mean. If the consuls had no authority to require a contractual promise, it was because the Congress had given them none and the understanding of Congress must be the controlling interpretation.
Hofstadter and Heoht JJ., concur.