356 Mich. 73 (1959)
96 N.W.2d 140
STATE, ex rel. ATTORNEY GENERAL,
v.
BINDER.
Docket No. 47, Calendar No. 47,765.
Supreme Court of Michigan.
Decided April 13, 1959.
Paul L. Adams, Attorney General, Samuel J. Torina, Solicitor General, and Eugene F. Townsend, Assistant Attorney General, for plaintiff.
Philip Woodworth, for defendants.
DETHMERS, C.J.
In June, 1952, defendants made application to the immigration authorities in the state department of the United States government to have Johana Kizler admitted to the United States as an immigrant from Yugoslavia. In that connection they sent to the American embassy in Belgrade, at its request, 2 affidavits signed by them, which contained the following:
*75 "That each of us do promise to support said person during her lifetime and promise that she will never become a public charge. * * *
"We have jointly made application that Johana Kizler be admitted to the United States and we unconditionally, and each of us do agree and promise to support her for as long as she shall live in said United States. * * *
"We intend to support said applicant from our income in the event that she is ever unable to work, and as for employment we can secure same for her in our village. We intend that she shall live in our home."
Thereafter Johana Kizler was permitted to enter the United States. She lived with defendants for over 2 years until she was admitted, upon adjudication of the probate court, to the Pontiac State Hospital as a mentally-ill person. She remained there as a patient at public charge up to time of trial. This suit is to recover the cost of her care there. It is planted on the theory that plaintiff is the third-party beneficiary of a contract[*] between defendants and the United States government to support her. From judgment for plaintiff, defendants appeal.
Defendants contend on appeal that the affidavits did not constitute a contract imposing a legal obligation on them to furnish support; that there is no authority in law for the immigration officials of the department of state to enter into such contract or to require one from the sponsor of an immigrant; that, at most, only a moral obligation resulted from giving the affidavits.
The only legal authority for requiring such contract which is pointed to by plaintiff is the following:
"Any alien excludable because he is likely to become a public charge * * * may, if otherwise admissible, *76 be admitted in the discretion of the attorney general upon the giving of a suitable and proper bond or undertaking approved by the attorney general, in such amount and containing such conditions as he may prescribe, to the United States and to all States, territories, counties, towns, municipalities, and districts thereof holding the United States and all States, territories, counties, towns, municipalities, and districts thereof harmless against such alien becoming a public charge. * * * The admission of such alien shall be a consideration for the giving of such bond, undertaking, or cash deposit. Suit may be brought thereon in the name and by the proper law officers of the United States for the use of the United States, or of any State, territory, district, county, town, or municipality in which such alien becomes a public charge." 66 Stat 188 (8 USCA, § 1183).
The instant case does not involve the admission of an alien upon exercise of the discretion of the attorney general of the United States nor the giving of a bond or undertaking approved by him. He is not shown to have figured in the matter at all. There was no attempt to follow this section of the statute. It affords no authority for what was done. Plaintiff cites no other and we find none.
The argument portion of defendants' brief consists entirely of the opinion of the trial judge, holding consistently with defendants' position, in Department of Mental Hygiene of the State of California v. Renel, 8 Misc2d 615 (167 NYS2d 22), and the opinion, in that same case, of the appellate term of the New York supreme court reported at 10 Misc2d 402 (173 NYS2d 231, affirmed 175 NYS2d 556). In response, plaintiff's brief is devoted to arguments that (1) defendants may not here predicate their defense of no contract and no authority to make one upon a record made in the New York case but lacking in this case, (2) inasmuch as the defense now *77 being urged is essentially that of "ultra vires" it is closed to defendants because not pleaded, and (3) they are precluded or estopped from raising that defense after receiving the benefits of the contract.
In urging that decision in this case may not follow that of the New York case, plaintiff says that this is so, in part, because the record here does not contain evidentiary materials relied upon by the court in that case. These were pamphlets issued by the United States department of state, a set of official instructions of that department to sponsors of immigrants, and letters written by officials of that department, all showing that the United States government has always considered affidavits such as defendants executed as giving rise to a moral rather than a legal obligation. We may, nevertheless, take judicial notice, as did the New York courts, of reports of United States senate committees on the judiciary evidencing that same position.[**] Regardless, however, of the absence of such materials in the record at bar, the fact remains that no statutory authority appears for officials of the state department exacting from sponsors of immigrants binding legal agreements to support them.
The question raised by defendants is not whether the taking of the affidavits from defendants was an ultra vires act on the part of the United States government. (There can be no doubt that power reposes in congress to so require by duly enacted statute.) There was, therefore, no necessity for defendants pleading "ultra vires" as an affirmative defense. Rather, the question is one of agency. Were the immigration *78 authorities of the state department who were involved in this case, as officials, agents or employees of the United States government, authorized by it to enter into such contract with defendants or to require one from them as a condition to admission of the immigrant? Plaintiff's case depends on an affirmative answer. The burden of establishing that authority rested on plaintiff as one of the essential elements of its case. Newton v. Principaal, 82 Mich 271; Peoples State Bank v. Bloch, 249 Mich 99. Lack of such authority is not a matter of affirmative defense requiring its being especially pleaded by defendants.
In support of its estoppel theory, plaintiff cites such cases as Hall Manufacturing Co. v. American Railway Supply Co., 48 Mich 331, holding that one who has contracted with a corporation cannot, after receiving the full benefit of the contract, in an action against him on it, deny the authority of the corporation to make it, especially if the stockholders are satisfied. As we have already noted, there is no question here of the power of the United States government, under proper enabling act of congress to make or require such contract from sponsors. The question is whether the government has done so. We hold that it has not. There being no such act of congress empowering immigration officials to make or require such a contract for the United States government, it can scarcely be concluded that there was an intent on the part of the government to create a contract obligation. The mentioned senate committee reports, as we have observed, negate the idea of such intent. The government of the United States has not exercised its undisputed power to enter into or to take from defendants, as sponsors, a contract to support the immigrant. There is, then, no contract from which the defendants have received benefits *79 and, accordingly, nothing upon which to predicate the doctrine of estoppel.
Reversed, with costs to defendants.
CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.
KAVANAGH, J., did not sit.
NOTES
[*] See CL 1948, § 691.541 et seq. (Stat Ann 1953 Rev § 26.1231 et seq.).  REPORTER.
[**] A report of the committee on the judiciary of the United States senate, made in March of 1957 by its subcommittee to investigate problems connected with the emigration of refugees and escapees, pursuant to S. Res. 168, 84th Congress 2d Session, as extended by S. Res. 84, 85th Congress (Senate Report No 129, 85th Congress). Also, the report of the senate committee on the judiciary of April 20, 1950, titled "The Immigration and Naturalization Systems of the United States" (Senate Report No 1515, 81st Congress 2d Session).