[Civ. No. 9305. Fourth Dist., Div. One. Sept. 23, 1969.]

COUNTY OF SAN DIEGO, Plaintiff and Respondent, v. ANATALIO T. VILORIA, Defendant and Appellant.

Smith, Biggins & Crockett and Robert C. Baxley for Defendant and Appellant.

Bertram McLees, Jr., County Council, and Lloyd M. Harmon, Jr., Deputy County Counsel, for Plaintiff and Respondent.

COUGHLIN, J.—Defendant, Viloria, appeals from a judgment against him in favor of plaintiff, County of San Diego, awarding the latter $5,879.27 on account of medical and hospital services defendant furnished an alien named Aguirre, an indigent person.

In July 1960, Aguirre sought admission into the United States from Mexico as an immigrant; applied to the American consul in Tijuana, Mexico, for a visa; and delivered to the consul an affidavit executed by defendant in which, among other things, he stated: "I am ready and willing to support the above named [Aguirre] in the United States, and I guarantee that HE will not become a Public Charge."

Aguirre, who was a farmer, was granted a visa and admitted into the United States; worked on defendant's farm for a month; then went to work on a farm owned by a man named Tachiki; and continued to work for Tachiki until he was hospitalized for tuberculosis on November 6, 1964. In the

meantime Aguirre sponsored admission of his wife and three children into the United States from Mexico as alien immigrants. Thereafter a fourth child was born in the United States. During all of this time they were residents of the County of San Diego. Aguirre and the members of his family received hospitalization in a hospital maintained by the county.

The Administrative Code of the County of San Diego governs admission to the county hospital and, among other things, authorizes admittance of a person determined to be a "medical indigent" under rules prescribed in a directive from the director of medical institutions.

On November 6, 1964, Aguirre, who was suffering from tuberculosis, was admitted to the hospital because a man with a family of four earning less than $340 per month, pursuant to the directive, is a "medical indigent" entitled to admission to the hospital, and Aguirre theretofore earned only $215 per month.

The County Administrative Code also provides: "Except as otherwise provided by law or by contract all aid rendered shall be a charge against the patient, his spouse when he is married, or his parents when he is a minor, and they shall be jointly and severally liable to pay the cost thereof."

█ State law requires the County of San Diego to furnish hospitalization to an indigent person. (Welf. & Inst. Code, § 17000—formerly Welf. & Inst. Code, § 2500; Health & Saf. Code, § 1445; *County of Los Angeles* v. *Frisbie*, 19 Cal.2d 634, 639 [122 P.2d 526]; *City & County of San Francisco* v. *Collins*, 216 Cal. 187, 190 [13 P.2d 912]; *In re Dudley*, 239 Cal.App.2d 401, 403, [48 Cal.Rptr. 790]; *Chavez* v. *Sprague*, 209 Cal.App.2d 101, 107 [25 Cal.Rptr. 603]; *Acosta* v. *County of San Diego*, 126 Cal.App.2d 455 [272 P.2d 92].) In the event the indigent person is able to pay a part of although not the total charge for hospital services rendered him by the county, he is obligated accordingly. (*Goodall* v. *Brite*, 11 Cal. App.2d 540, 548-549, 550-551 [54 P.2d 510].) The county is authorized to fix the rate to be charged the indigent and to direct its collection. (Health & Saf. Code, § 1473.) Nevertheless, the obligation is limited in amount to the extent of the indigent person's ability to pay. (*County of Alameda* v. *Kaiser*, 238 Cal.App.2d 815, 818 [48 Cal.Rptr. 343].) █ The provision of the County Administrative Code directing a charge against patients for hospital services expressly does not apply where "*otherwise provided by law*" and, in this

manner, limits the obligation of the indigent patient to his ability to pay. (Italics added.) In the case at bench the practice of charging the indigent person for hospital services was activated by setting up an account in the name of Aguirre in which a daily charge approximating $22 was entered as a debit, and payments from Aguirre in the sum of $5 and on account of disability insurance in the sum of $240 were entered as credits. The County of San Diego also adopted the practice of notifying the sponsor of an alien immigrant when the latter was receiving hospital services as an indigent person; had been informed defendant had executed a support affidavit as sponsor for Aguirre's admission to the United States; and notified defendant of the latter's hospitalization. The evidence dictates the conclusion Aguirre was admitted to the hospital because he was an indigent person within the meaning of the directive pursuant to which indigency is determined; was not admitted because defendant had executed the sponsor's affidavit; and would have been admitted even though no sponsor's affidavit existed.

The County sued defendant to recover the unpaid balance of the charges against Aguirre; alleged it was obligated by state law to furnish hospital services to indigent persons and Aguirre was an indigent person when the services for which he was charged were rendered; and sought recovery from defendant upon the theory he, by virtue of his sponsor's affidavit, was liable for services rendered Aguirre as a public charge. Admittedly, while Aguirre was in the hospital he was unable to pay anything for the services rendered him.

The trial court found, among other things, "defendant at the time of executing said affidavit [i.e., the sponsor's affidavit] intended to and did execute said affidavit with the intent that it become a contract of continuing guarantee enforceable by any state of the United States . . . or county within said state in which Edmundo Espinoza Aguirre became, and received aid as, a public charge"; defendant executed the affidavit "with the intent that said affidavit when accepted by the American Consul in Tijuana, Mexico, constitute a legally enforceable contract between said defendant and the United States Department of Immigration and Naturalization Service"; when the affidavit was accepted by the American Consul he intended "said contract be enforceable by the United States, any state of the United States, or any . . . county . . . within said state . . ."; and hospital services were rendered Aguirre by the County of San Diego

for the period November 6, 1964, to February 10, 1966, during which time "Aguirre was an indigent person and a public charge of the County of San Diego." Judgment in favor of the County against defendant for the amount of the unpaid charges was entered accordingly.

Defendant contends the circumstances attendant upon execution of the affidavit establish as a matter of law there was no intention thereby to create a legal obligation to support Aguirre, or otherwise render him liable for hospitalization furnished Aguirre as a public charge. In support of his position defendant cites *Department of Mental Hygiene of Cal.* v. *Renal,* 10 Misc.2d 402 [173 N.Y.S.2d 231], a 1958 decision by the Appellate Division of the Supreme Court of New York, and *State* ex rel. *Attorney General* v. *Binder,* 356 Mich. 73 [96 N.W.2d 140], a 1959 decision by the Supreme Court of Michigan. In the New York case the sponsors of immigrant aliens submitted an affidavit in which they said: "That we are willing and able to receive, maintain, support the aliens" seeking admission to the United States, "and hereby assume such obligations guaranteeing that none of them will at any time become public charges upon any community in the United States." In the Michigan case the sponsors of an immigrant alien submitted an affidavit stating: "That each of us do promise to support said person [the alien] during her lifetime and promise that she will never become a public charge. . . . We have jointly made application that Johana Kizler [the alien] be admitted to the United States and we unconditionally, and each of us do agree and promise to support her for as long as she shall live in said United States. . . . We intend to support said applicant from our income in the event that she is ever unable to work, and as for employment we can secure same for her in our village." In each case the court held execution of the affidavit under consideration therein, in light of the circumstances attendant thereon, was not intended to create a legal obligation, and imposed only a moral obligation.

Where parties to a writing purporting to be a contract do not intend it to be a contract, no contract exists. (*Halldin* v. *Usher,* 49 Cal.2d 749 [321 P.2d 746].) The circumstances under which the writing is executed may show no contract was intended. (*Everts* v. *Matteson,* 21 Cal.2d 437, 449 [132 P.2d 476]; *Fowler* v. *Security-First Nat. Bank,* 146 Cal.App. 2d 37, 47 [303 P.2d 565].) Application of the parol evidence rule is not involved. (*Halldin* v. *Usher, supra,* 49 Cal.2d 749,

752; *P. A. Smith Co.* v. *Muller,* 201 Cal. 219, 222 [256 P. 411] ; *Haidinger-Hayes, Inc.* v. *Marvin Hime & Co.,* 206 Cal. App.2d 46, 51 [23 Cal.Rptr. 455].)

An alien seeking admission to the United States as an immigrant, as a condition to admission, obtains an immigrant visa from an American consul. (8 U.S.C.A. § 1181.) If, among other things, he is afflicted with tuberculosis in any form or in the opinion of the consular officer is likely at any time to become a public charge he is ineligible to receive a visa and issuance thereof to him should be denied. (8 U.S.C.A. §§ 1182 and 1201(g).) However, a visa may not be denied on the ground the alien is likely to become a public charge unless the circumstances known to the consular officer reasonably support this conclusion. (*Johnson* v. *Tertzag,* 2 F.2d 40, 42; *Ex parte Hosaye Sakaguchi,* 277 F. 913, 915.) In any event, even though an alien is excludable because he is likely to become a public charge, or because of physical disability other than tuberculosis, he may be admitted, in the discretion of the Attorney General, upon giving a bond in an amount and upon conditions approved by the latter. (8 U.S.C.A. § 1183.)

The consular officer has authority ''to require such documents as he may consider necessary to establish the alien's eligibility to receive'' a visa. (C.F.R. § 42.111.) Apparently, in light of this regulation, the consular officer may consider a sponsor's affidavit of support as evidence in determining whether an applicant is likely to become a public charge. Whether in the case at bench the sponsor's affidavit of support was submitted routinely or was required because of particular circumstances known to the consular officer, does not appear. A visa office bulletin, dated November 7, 1958, apparently directed to consular officers, stated that an affidavit of support in itself would not establish the alien would not be likely to become a public charge; the evidentiary value of such an affidavit is dependent upon the relationship 'between the person executing it and the alien; where the affiant is financially responsible and is under a legal obligation to support the alien the affidavit, as a rule, will be satisfactory evidence the alien will not become a public charge; but, on the other hand, ''an affidavit submitted by a casual friend or distant relative who has little or no personal knowledge of the visa applicant will have limited, if any, probative value''. (Visa Office Bulletin No. 35—November 7, 1958.)

In the case at bench the evidence establishes defendant did not know Aguirre and executed the affidavit only because he

356

was requested to do so by Aguirre's father-in-law. Defendant testified he believed the affidavit was merely a working letter; did not read it; did not have it read to him; and did not know it contained any provision respecting Aguirre's support. In light of the finding in the premises we must assume the trial court rejected this evidence. Under this state of the record, there is no showing respecting defendant's intention except that reflected in the writing, and no showing respecting the intention of the consular officer except that reflected by the rules and regulations under which he acted and the status of the law in the premises. When the consular officer considered the proof submitted to him in support of Aguirre's application for a visa the bulletin heretofore noted had been in effect for approximately a year and a half, the New York case had been decided before that bulletin had been issued, and the decision in the Michigan case had been final for more than a year.

In *United States* ex rel. *Smith* v. *Curran*, 12 F.2d 636, 638, decided June 1, 1926, the court held, in substance, the offer of a relative to care for an alien, contained in an affidavit of support, does not require a finding the alien is not likely to become a public charge where the relative is not one upon whom the client has a legal claim for support. Inherent in this holding is the conclusion the affidavit of support did not create a legal claim.

 The circumstances attendant upon execution of the sponsor's affidavit by defendant dictate the conclusion the parties to the transaction did not intend the creation of a contract, as shown by the fact the affidavit is accepted by the consular office merely as evidence on the issue of whether the applicant for a visa is likely to become a public charge; the probative value, if any, of such an affidavit by a person not related to the applicant in that degree imposing a legal obligation to support is limited; two higher court opinions hold the affidavit imposed on the affiant a moral obligation and not a legal obligation; the legislative history of the immigration laws, as noted in the decisions in those cases, reflects an intention the execution of the affidavit does not impose a legal obligation; a federal court decision of long standing dictates the conclusion the affidavit does not create a legal claim for support; and even though the consular officer is of the opinion the applicant is likely to become a public charge he, nevertheless, may be admitted to the United States upon posting a

bond in an amount and on conditions approved by the Attorney General, which unequivocally creates legal obligations.

A consideration of the confusion and uncertainty inherent in the alleged contractual language of the affidavit in the case at bench buttresses the conclusion no legal obligation was intended.

The writing is entitled ''Affidavit of Support'' not a ''Contract of Support'' nor an ''Agreement of Support''; is signed only by the affiant; does not recite or disclose a consideration; is a form supplied by an undisclosed source; in major part contains statements of an evidentiary nature, added to the form, respecting the affiant's citizenship, marital status, property ownership and income; and in only two lines sets forth the form language upon which plaintiff relies as the basis for a contractual obligation.

The alleged promissory language was a statement by affiant that he is ''ready and willing to support'' the alien and the further statement ''I guarantee that HE [the alien] will not become a Public Charge.'' The confusion attendant upon the contractual nature of this language is demonstrated by the trial court's findings of fact and conclusions of law.

The court found defendant executed the affidavit ''with the intent that it become a *contract of continuing guarantee*'' enforceable by any county in the United States in which Aguirre received aid as a public charge, and concluded ''by virtue of the execution of the affidavit of support by the defendant and the subsequent issuance of the visa by the American Consul . . . the defendant and the United States entered into a *contract of continuing guarantee* expressly for the benefit'' of any county within the United States. (Italics added.)

A ''guarantor is one who promises to answer for the debt, default or miscarriage of another,'' called the principal. (Civ. Code, § 2787.) The contract containing the promise is a contract of guarantee. In concluding the sponsor's affidavit constituted a contract of continuing guarantee for the benefit of the County of San Diego, it appears the trial court found defendant was a guarantor and Aguirre, as principal, was the debtor or obligor under a debt or other obligation in favor of the County of San Diego, as creditor or obligee. However, the findings do not reveal what debt or obligation was guaranteed. By statute the liability of a guarantor is commensurate with that of the principal. (Civ. Code, § 2809.) ''[W]here the principal is not liable on the obligation, neither is the guaran-

tor." (*U. S. Leasing Corp.* v. *Du Pont,* 69 Cal.2d 275, 290 [70 Cal.Rptr. 393, 444 P.2d 65].) In the case at bench Aguirre's liability for hospitalization was limited to his ability to pay. The evidence establishes without question he was unable to pay anything at the time the services were rendered. Thus, there is no debt or default for which defendant is answerable. Further, assuming the support affidavit created a continuing contract of guarantee, it was general in nature; did not specifically refer to the debt or obligation arising out of the rendition of services by plaintiff to Aguirre; and, under these circumstances, did not impose liability upon defendant unless plaintiff, in furnishing such services, relied on the guarantee. (*J. C. Wattenbarger & Sons* v. *Sanders,* 216 Cal.App.2d 495, 503 [30 Cal.Rptr. 910]; *Calcot Assn.* v. *Coast Cotton Mills,* 140 Cal.App.2d 268, 272 [295 P.2d 1].) The evidence establishes unequivocally defendant furnished hospital services to Aguirre not because of any guarantee created by the sponsor's affidavit, but in the discharge of its duty imposed by law because Aguirre was a "medical indigent."

Further confusion and uncertainty respecting the legal effect of defendant's statement: "I guarantee that HE will not become a Public Charge" is evidenced in the trial court's conclusion of law where, although it had found and determined the statement created a "contract of continuing guarantee," it further concluded "defendant made an unconditional guarantee . . . that he would not permit Edmundo Espinoza Aguirre to become a public charge"; defendant breached "said contract when Edmundo Espinoza Aguirre became a public charge"; and plaintiff is damaged in the sum of $5,879.27 as a proximate result of such breach. These conclusions are premised on a contract of warranty rather than a contract of guarantee. Assuming defendant and the consular officer issuing Aguirre's visa, intended the term "guarantee" should have the legal effect of the term "warrant," the circumstances attendant upon the transaction, in light of the contention a legal obligation was intended, present an unsurmountable aura of confusion and uncertainty. Did the parties contemplate the warranty would require only the elimination of those factors considered by the consular officer as circumstances reasonably supporting the conclusion the alien was likely to become a public charge? In ascertaining the intention of the parties respecting the legal effect of the affidavit, is it reasonable to assume the parties contemplated factors that might cause an alien to become a public charge not existing at

the time of his application for a visa? When, as in the instant case, Aguirre became a public charge because he contracted tuberculosis after admission into the United States, is it reasonable to conclude the parties contemplated this cause and if contemplated, would they have intended to create a legal obligation warranting against its occurrence? An alien "afflicted with tuberculosis in any form" is ineligible for admission into the United States, even upon posting a bond, whether or not it is likely he would become a public charge. Does the warranty contemplate the elimination of factors over which the sponsor has no control but which would cause the alien to become a public charge such, as in the instant case, the alien's sponsorship for admission into the United States of the members of his family? Aguirre was found to be a "medical indigent" because his earning capacity, as established by his previous income, was less than $340 per month and, under county regulations, a man with a family of four who does not earn $340 per month is an indigent. The evidence does not show whether a single person earning $215 per month, as did Aguirre, was an indigent person under the county regulations. Is it reasonable to conclude the parties contemplated a legal obligation the extent of which varies from state to state, depending upon local regulations establishing the duty to confer upon a resident alien services which would make him a public charge about which the contracting parties had no information?

. ▇ Where the obligations attendant upon execution of a written agreement are not clearly expressed "the terms of the instrument and the circumstances under which it was made determine the character and extent of the undertaking." (*Everts* v. *Matteson, supra,* 21 Cal.2d 437, 449.) The writing will be "fairly construed to effect the object for which it was given and to accomplish the purpose for which it was designed." (*Ibid.*) These rules have been applied to an alleged guarantee situation. They are equally applicable where the inquiry involves a determination whether the parties intended to create a legal obligation or a moral obligation. The object of the sponsor's affidavit is to supply the consular officer with information from which he may conclude whether the applicant for a visa is likely to become a public charge. The purpose of the sponsor's affidavit, whether the parties contemplated a legal or moral obligation, was to assure the consular officer those incidents known to the consul indicating the alien was likely to become a public charge would

not occur. It was not the purpose of the affidavit to create an obligation to reimburse a governmental agency for services rendered the alien when he became a public charge.

Another circumstance supporting the conclusion the sponsor and the United States do not intend execution of the sponsor's affidavit will create a legal obligation is the fact the alien is not a party to the alleged contract; is not obligated to do anything which would prevent his becoming a public charge; in nowise is subject to the control of the sponsor; may refuse employment offered him by the sponsor; may neglect his health to the extent he contracts a disabling disease; and in a variety of other ways may so conduct himself that he will become a public charge.

We conclude the determination of the trial court the execution of the sponsor's affidavit created a contract between the defendant and the United States, as a matter of law, is not supported by the evidence.

The judgment is reversed.

Brown (Gerald), P. J., and Whelan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 19, 1969.