[No. C064973. Third Dist. June 27, 2011.]

BEVERLY CAROL FUCHINO, Plaintiff and Appellant, v.
ANN EDWARDS-BUCKLEY, as Director, etc., et al., Defendants and
Respondents.

**COUNSEL**

Legal Services of Northern California, Amy Williams, Jodie Berger; Western Center on Law and Poverty, Richard Rothschild, Catherine Murphy and Abigail Coursolle for Plaintiff and Appellant.

Robert A. Ryan, Jr., County Counsel, and Rick Heyer, Deputy County Counsel, for Defendants and Respondents.

OPINION

**HOCH, J.**—Appellant Beverly Carol Fuchino petitioned the superior court for a writ of mandamus to, among other things, compel Sacramento County to cover the cost of emergency ambulance services provided to her in Monterey County. She claimed that Sacramento County was required to pay for her out-of-county emergency ambulance services pursuant to Welfare and Institutions Code section 17000.[1] The trial court denied this portion of her petition. We reverse.

## FACTUAL BACKGROUND

The underlying facts are not in dispute. Fuchino is an indigent Sacramento County resident with severe diabetes. She enrolled in and has received medical care under the County Medically Indigent Services Program (CMISP), the program through which Sacramento County endeavors to fulfill its statutory obligations under the Welfare and Institutions Code. The medical care she has received under CMISP includes medication and a diet regimen. She has no copay requirement.

On April 21, 2007, Fuchino was in Monterey County, California, with her daughters to celebrate her 63d birthday. It was Fuchino's first and only trip to Monterey County. She took her normal four insulin injections that day and watched her diet as usual. Late at night, she went into diabetic shock and became unconscious. Her daughters called an ambulance to the hotel.

An ambulance from Westmed Ambulance Inc. (Westmed) transported Fuchino to Community Hospital of the Monterey Peninsula. In transit, ambulance personnel administered glucagon and dextrose to Fuchino. Once at the hospital, she was treated in the emergency room.

· Some time later, Fuchino received a bill from Westmed totaling $1,391.04 for the ambulance services provided on April 21, 2007. Fuchino submitted the bill to her Sacramento CMISP worker and requested coverage. Fuchino's request was denied for the stated reason that "[p]ayment of ambulance services is not within the scope of services provided by CMISP." Fuchino submitted a letter to Sacramento County to appeal CMISP's denial of coverage for the ambulance bill. In a letter response, Sacramento County concluded that "Fuchino's expenses in Monterey County are not the responsibility of Sacramento County CMISP." Sacramento County also sent a letter to Fuchino informing her that her administrative appeal was denied. The letter ended with the following statement: **"The Decision On Your Request**

---

[1] Undesignated section references are to the Welfare and Institutions Code.

**Is The Final Decision. There Is No Further Appeal Recourse Available To You Within The Department Of Health and Human Services.**"

Consequently, Fuchino submitted a request to Monterey County to cover the cost of the ambulance services. Monterey County denied her request. The written denial, signed by a Monterey County representative, states in pertinent part: "I cannot find that . . . Fuchino has ever been a county resident. She therefore is not eligible for services provided by our county including ambulance services."

## PROCEDURAL HISTORY

On February 27, 2009, Fuchino filed a verified petition for writ of mandamus in the Sacramento County Superior Court.[2] The petition sought both a writ of administrative mandamus (Code Civ. Proc., § 1094.5) to compel Sacramento County to issue a decision covering the cost of her ambulance bill and a traditional writ of mandamus (Code Civ. Proc., § 1085) to compel Sacramento County to establish new policies for its CMISP. The new CMISP policies sought were: (i) coverage for medically necessary emergency ambulance services without requiring prior authorization; (ii) coverage for medically necessary care received outside of Sacramento County by CMISP beneficiaries who are out of county when the need for care arises and the person is unable to return to Sacramento for treatment; (iii) coverage for medically necessary emergency care provided by noncontracted providers; and (iv) appeal rights, including a formal appeal, when services are denied for falling outside the scope of CMISP's coverage.

The trial court heard the matter and granted in part and denied in part Fuchino's petition. The judgment states in pertinent part: "Petitioner's claims for payment by the Sacramento CMISP of the costs of emergency ambulance services received by petitioner in Monterey County while a Sacramento County resident eligible for CMISP services are denied. As explained in *City of Lomita v. County of Los Angeles* (1983) 148 Cal.App.3d 671, 673 [196 Cal.Rptr. 221], and *City of Lomita v. Superior Court* (1986) 186 Cal.App.3d 479, 481–482 [230 Cal.Rptr. 790], a county has a duty to provide and pay for emergency ambulance services needed by an indigent person who is permanently or temporarily within the county."

---

[2] The petition was filed against respondents Lynn Frank as then Director of the Sacramento County Department of Health and Human Services, the Sacramento County Department of Health and Human Services, Bruce Wagstaff as then Director of the Sacramento County Department of Human Assistance, the Sacramento County Department of Human Assistance, and the Sacramento County Board of Supervisors. The parties refer to the respondents collectively as the "County" or "Sacramento County." For the sake of clarity, we choose the latter appellation.

Fuchino timely filed a notice of appeal from the judgment denying her petition.[3]

## DISCUSSION

This appeal involves the interpretation and application of statutory language, raising questions of law subject to our independent review. (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1411 [60 Cal.Rptr.3d 719] ["The interpretation and application of a statute involve questions of law subject to de novo review."].)

On appeal, Fuchino argues that under section 17000 Sacramento County is financially responsible for her out-of-county emergency ambulance bill. Under the facts of this case, we agree.[4]

### I.

### *Section 17000 Obligations*

 Section 17000 provides: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions." Section 17000 creates a relief program for indigents who cannot qualify for other forms of specialized aid. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 991 [90 Cal.Rptr.2d 236, 987 P.2d 705] (*Hunt*); *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 92 [61 Cal.Rptr.2d 134, 931 P.2d 312] (*County of San Diego*).) The statute requires a county to "relieve" and "support" its indigents only when they are not relieved and supported by other means. (§ 17000; see *Hunt, supra*, 21 Cal.4th at p. 991; *County of San Diego, supra*, 15 Cal.4th at p. 92 & fn. 14.)

A county's relief and support obligations under section 17000 are owed to its indigent "resident[s]." (§ 17000; see also § 17100; *Hunt, supra*, 21 Cal.4th

---

[3] Given the disposition, it is not necessary to address the absence of Monterey County from the proceeding. While Fuchino was not required to name both counties in the petition, we note that Sacramento County did not seek to add Monterey County to the proceeding or object to its absence.

[4] This opinion only addresses the obligation of Sacramento County to pay for the cost of emergency ambulance services rendered to an indigent resident of Sacramento County during a short visit to a nearby county within the state. This case provides no occasion to consider other factual scenarios such as whether a county has a duty to pay for emergency ambulance services received by an indigent resident while in another state or in another country. We leave those questions to cases which present them.

at pp. 990, 1005.) An indigent's residence "is the place where [he or she] remains when not called elsewhere for labor or other special or temporary purpose, and to which he [or she] returns in seasons of repose." (§ 17101.) By operation of section 17105, "[a] person who is a resident of California within the meaning of this chapter is a lawful resident of the county wherein he [or she] applies for aid, if he [or she] has resided therein continuously for one year immediately preceding his [or her] application for assistance. If the applicant has no such residence, the county wherein he [or she] last resided continuously for one year immediately preceding his [or her] application shall be responsible for his [or her] support. If the applicant has no such year's residence within three years preceding application, that county shall be responsible for his [or her] support wherein he [or she] was present for the longest time during the three-year period." A person can have only one residence. (Gov. Code, § 244, subd. (b); *Nelson v. Board of Supervisors* (1987) 190 Cal.App.3d 25, 30 [235 Cal.Rptr. 305] [quoting Gov. Code, § 244, subd. (b), in a Welf. & Inst. Code, § 17000 eligibility case].)

Section 17000 imposes various obligations on counties with respect to their indigent residents. Among other obligations, courts have interpreted section 17000 as requiring counties to provide indigent residents with emergency and medically necessary care. (*County of San Diego, supra*, 15 Cal.4th at pp. 104–105 [collecting cases]; see also *Alford v. County of San Diego* (2007) 151 Cal.App.4th 16, 28 [59 Cal.Rptr.3d 596] (*Alford*).) This "obligation neither requires the County to satisfy all unmet needs, nor mandates universal health care. . . . The Legislature has eliminated any requirement that counties provide the same quality of health care to residents who cannot afford to pay as that available to nonindigent individuals receiving health care services in private facilities. [Citation.] Section 10000 imposes a minimum standard of care—one requiring that subsistence medical services be provided promptly and humanely." (*Hunt, supra*, 21 Cal.4th at p. 1014.)

"[C]ounties have no discretion to refuse to provide medical care to 'indigent persons' within the meaning of section 17000 who do not receive it from other sources." (*County of San Diego, supra*, 15 Cal.4th at p. 101.) Not only must an indigent be provided with emergency and medically necessary care, the county must relieve the indigent of the cost of such care. (§ 17000; see also *Hunt, supra*, 21 Cal.4th at p. 1013 [quoting legislative history which states that " 'counties are, by definition, a "last resort" for any person, with or without the means to pay [for health care], who does not qualify for federal or state aid' "].) A county's section 17000 duty to provide emergency and medically necessary care "must [be] fulfill[ed] . . . without regard to its fiscal plight." (*County of Alameda v. State Bd. of Control* (1993) 14 Cal.App.4th 1096, 1108 [18 Cal.Rptr.2d 487].)

During oral argument, Sacramento County suggested that one or both of the counties *could have* submitted this payment dispute to the State Department of Social Services under section 17005. Section 17005 provides: "If a dispute occurs between counties as to the responsibility for an indigent, either county may submit the dispute to the department. The decision of the department thereon shall be final."

■ Here, there is no evidence that Sacramento County or Monterey County have submitted, or intend to submit, this dispute over which county bears financial responsibility for Fuchino's emergency ambulance services to the State Department of Social Services. Sacramento County has not requested a stay so that it may pursue dispute resolution with Monterey County under section 17005. The statute makes clear that this dispute resolution process is not mandatory. And there is no provision in the statute for a third party, such as an indigent resident, to require a county to submit a dispute to the State Department of Social Services or to participate in the dispute resolution process. The facts demonstrate that with respect to the out-of-county emergency ambulance services before the court, Fuchino exhausted the administrative appeal process with Sacramento County. We thus proceed to the merits.

There is no dispute that Fuchino is an indigent resident of Sacramento County, has diabetes, and has received medical care for her condition from Sacramento County through CMISP. During her trip to Monterey County, Fuchino went into diabetic shock and was taken by ambulance to a local hospital and provided treatment while in transit. The ambulance services she received undoubtedly qualify as emergency or medically necessary care within the meaning of section 17000. (See *Alford, supra,* 151 Cal.App.4th at p. 33 [regarding diabetes as "serious ailment[]," treatment of which is within § 17000's ambit]; cf. Health & Saf. Code, § 1797.70 [" 'Emergency' means a condition or situation in which an individual has a need for immediate medical attention, or where the potential for such need is perceived by emergency medical personnel or a public safety agency."]; Health & Saf. Code, § 1799.110, subd. (b) [" '[E]mergency medical services' and 'emergency medical care' means those medical services required for the immediate diagnosis and treatment of medical conditions which, if not immediately diagnosed and treated, could lead to serious physical or mental disability or death."]; Health & Saf. Code, § 1317.1, subd. (b) [" 'Emergency medical condition' means a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in any of the following: [¶] (1) Placing the patient's health in serious jeopardy. [¶] (2) Serious impairment to bodily functions. [¶] (3) Serious dysfunction of any bodily organ or part."].)

■ The issue is whether Sacramento County has an obligation under section 17000 to cover the cost of the out-of-county emergency ambulance services provided to Fuchino, one of its indigent residents. Fuchino has not been relieved of this medically necessary cost by any other means nor can she herself afford the bill. We conclude that Sacramento County, her county of residence and "last resort," is obligated under section 17000 to relieve her of this cost.

Sacramento County raises a host of arguments to the contrary, but none are persuasive.

## II.

### Applicability of Government Code Section 29606 and Health and Safety Code Section 1444

Arguing against financial responsibility for the cost of Fuchino's emergency ambulance services, Sacramento County relies on Government Code section 29606 and Health and Safety Code section 1444 and contends that Monterey County should pay the bill. These statutes, however, do not support the conclusion that Monterey County is financially responsible for Fuchino's emergency ambulance services.

Government Code section 29606 provides that "[t]he necessary expenses incurred in the support of the county hospitals, almshouses, and the indigent sick and otherwise dependent poor, *whose support is chargeable to the county*, are county charges." (Italics added.) This statute does not advance Sacramento County's position. Although Fuchino was indigent at the time she received emergency ambulance services in Monterey County, she was not an indigent whose support was chargeable to Monterey County. Fuchino's county of residence, Sacramento County, remained the county to which her support was chargeable. (See §§ 17000, 17101, 17105, 17110; *Chavez v. Sprague* (1962) 209 Cal.App.2d 101, 107–108 [25 Cal.Rptr. 603], citing, among other statutes, Gov. Code, § 29606 and stating, "[i]t is the responsibility of the county and the board of supervisors to support and provide medical and hospital care for the indigent sick *residents of the county*" (italics added).)[5]

---

[5] Section 17110 provides: "Whenever the respective boards of supervisors deem it best for the welfare of a family or in the public interest that an indigent remain in a county not responsible for his [or her] support, the county responsible for the support of the indigent may agree to support him [or her] in the county not so responsible; but no indigent supported in this manner shall be deemed to have acquired a residence in the nonresponsible county. Such agreement shall be made by the responsible county with the nonresponsible county, and a record or copy thereof shall be sent to and filed in the office of the department." As we have

Health and Safety Code section 1444 provides: "The board of supervisors in each county or city and county, having a population of one million or more, may purchase ambulances, establish and maintain an ambulance service, and prescribe rules for the government and management thereof. In any county where such a service has been established, any person who has been injured in an accident or is ill and in need of immediate transportation to a hospital may be taken to any available hospital. If he [or she] is indigent and unable to pay for the service, the cost shall be a proper charge against the county. If he [or she] is not indigent, he [or she] shall reimburse the county for the cost of transportation, which shall be in accordance with a schedule to be adopted by the board, and in no case less than the actual cost." This statute is unavailing here.

By its terms, the statute applies only with respect to counties having a "population of one million or more." Sacramento County made no showing or argument that Monterey County's population meets the statutory threshold of one million.[6]

## III.

### *Lomita I* and *Lomita II*

Citing *City of Lomita v. County of Los Angeles, supra*, 148 Cal.App.3d 671 (*Lomita I*) and *City of Lomita v. Superior Court, supra*, 186 Cal.App.3d 479 (*Lomita II*), Sacramento County contends that the ambulance transport of an indigent must be provided *and paid for* by the county where the emergency occurred. In essence, Sacramento County argues that under *Lomita I and II*, Monterey County must pay for Fuchino's ambulance bill and thus Fuchino has another means of relief or support under section 17000.

In *Lomita I*, Los Angeles County entered into ambulance contracts with cities inside the county. Pursuant to these contracts, Los Angeles County provided emergency ambulance services to "residents" of the contracting cities and recovered from those contracting cities the cost of providing these services to their "indigent residents." (*Lomita I, supra*, 148 Cal.App.3d at p. 672.) The cities sued "to compel the County to pay for emergency ambulance service rendered to indigent residents of those cities." (*Ibid.*) The

---

noted, Fuchino's visit to Monterey County to celebrate her birthday was brief. Thus, section 17110's provision for support arrangements does not apply here.

[6] In light of the publicly available census information for Monterey County, any such argument would be futile. According to census data when the ambulance services were provided to Fuchino in 2007, Monterey County had a total population of 402,116. (<http://factfinder.census.gov/servlet/DTTable?_bm=y&-geo_id=05000US06053&-ds_name=PEP_2009_EST&-mt_name=PEP_2009_EST_G2009_T001> [as of June 27, 2011].)

trial court determined that Los Angeles County had no such duty and the Court of Appeal reversed. *Lomita I* concluded that Los Angeles County was statutorily obligated to provide and pay for those ambulance services. Accordingly, the payment provisions in the contract were void for lack of consideration. (*Lomita I, supra,* 148 Cal.App.3d at pp. 672–673.)

The *Lomita I* court reasoned: "It is now established that it is the statutory duty of a County to provide hospital and medical services to all indigent County residents. (*County of San Diego* v. *Viloria* (1969) 276 Cal.App.2d 350, 352–353 [80 Cal.Rptr. 869] and cases there cited.) When an emergency occurs, anywhere in the county, which requires hospitalization, it necessarily follows that the duty to provide medical care includes the duty to provide emergency transportation from the place where the indigent is to the hospital where he [or she] can receive care. The cost of providing that service is, by statute, a proper county charge. (Gov. Code, § 29606; Health & Saf. Code, § 1444.)" (*Lomita I, supra,* 148 Cal.App.3d at p. 673.)[7]

Thus, the *Lomita I* court held that Los Angeles County had a duty to pay for emergency ambulance services provided within the county to its own indigent residents. The decision did not address whether Los Angeles County was required to cover the cost of emergency ambulance services provided to nonresidents, as the *Lomita I* court expressly noted. (*Lomita I, supra,* 148 Cal.App.3d at p. 673, fn. 4.)

Because *Lomita I* did not address whether Los Angeles County had a duty to pay for emergency ambulance services provided to nonresidents, it is inapposite.

In *Lomita II,* the court sought to "set out in clearer detail what [it] thought was clear from [its] original opinion." (*Lomita II, supra,* 186 Cal.App.3d at p. 481.) *Lomita II* separately discussed Los Angeles County's duty to provide ambulance services *and* its duty to cover the costs.

*Lomita II* held that Los Angeles County has a duty to provide emergency ambulance services to permanent county residents *and* any person found in the county in need of ambulance care. (*Lomita II, supra,* 186 Cal.App.3d at p. 481.) In terms of covering costs, *Lomita II* held that Los Angeles County

---

[7] In *County of San Diego* v. *Viloria, supra,* 276 Cal.App.2d 350, the court stated, "[s]tate law requires the County of San Diego to furnish hospitalization to an indigent person. (. . . § 17000—formerly . . . § 2500 . . . .)" (*County of San Diego* v. *Viloria, supra,* 276 Cal.App.2d at p. 352.)

must bear the costs of providing emergency ambulance services to " 'indigent' 'residents' of the county." (*Id.* at p. 482.) While *Lomita II* explained that if emergency ambulance services were provided to nonindigent persons, the nonindigent person would be responsible for paying the bill. *Lomita II* did not go further and address who (or which county) would bear financial responsibility if emergency ambulance services were provided to an indigent nonresident. In describing Los Angeles County's obligation to pay for emergency ambulance services, *Lomita II* indicated it was one of the "duties outlined" in *Lomita I*. As we have noted, *Lomita I* involved only residents of Los Angeles County who received emergency ambulance services within the county. Nothing in *Lomita II* addressed the issue of which county must pay for emergency ambulance services provided to nonresident indigents. (*Lomita II*, *supra*, 186 Cal.App.3d at pp. 481–482.)

Therefore, neither *Lomita I* nor *Lomita II* is instructive on the issue before the court.

IV.

*The Lack of a Contract Between Sacramento County and the Ambulance Provider*

Sacramento County next contends the lack of a contract between it and Fuchino's ambulance provider relieves it of the duty to pay the cost. In support, Sacramento County cites section 16817 and *Union of American Physicians & Dentists v. County of Santa Clara* (1983) 149 Cal.App.3d 45 [196 Cal.Rptr. 602] (*Union of American Physicians*). Specifically, Sacramento County maintains that because it did not have a contract with Westmed, it need not pay Fuchino's ambulance bill. We are not persuaded.

Section 16817 provides: "Notwithstanding any other provision of law, a county may enter into contracts with selected providers to provide health care services in expending funds provided pursuant to this part and Part 5 (commencing with section 17000). The county may negotiate such reimbursement or payment arrangements it desires in such contracts. A county shall not be obligated to pay for health care services unless pursuant to a contract or the county has specifically authorized such services and agreed to payment. All such contracts shall be available for review by the department. A county may require county residents specified in this part and Part 5 to use county facilities or county selected providers. *This section may not be construed to*

*limit a county's existing obligations to furnish health care.* Any county may also elect to act jointly on a regional basis with other counties in assuming the program responsibilities." (Italics added.)

■ This statute provides a means by which a county may fulfill its section 17000 duties—through contracts with selected health care providers—not a statutory device by which to avoid them. Under section 16817, a county is not obligated to pay a health care provider for services rendered outside the scope of agreement or authorization. The italicized language, however, compels the conclusion that the statute does not negate a county's duty vis-à-vis its indigent residents to furnish them with health care as required by section 17000.

True, section 16817 indicates that a county may require an indigent to obtain health care from a provider with which it has contracted. Here, however, Fuchino had no ability to select an ambulance company in Monterey County who had a contract with Sacramento County—that option did not exist. That Sacramento County did not have an applicable contract in place does not render the services Fuchino received something less than medically necessary care within section 17000's purview.

*Union of American Physicians* is consistent with this construction of section 16817. There, a group of private physicians and the Union of American Physicians and Dentists sought to compel Santa Clara County, its board of supervisors, and two county officers, to compensate the private physicians for the reasonable value of emergency medical services provided to persons allegedly eligible for county services under section 17000. (*Union of American Physicians, supra,* 149 Cal.App.3d at pp. 47–50.) The physicians did not have a contract with Santa Clara County to provide these services but attempted to invoke quasi-contract theories to obtain reimbursement from Santa Clara County. (*Ibid.*)

*Union of American Physicians* concluded that Santa Clara County was not required to "compensate noncontracting private physicians for emergency medical services rendered to indigent residents." (*Union of American Physicians, supra,* 149 Cal.App.3d at p. 48.) The court reasoned that the physicians' claim, being one against a county, must "rest on more than principles of restitution; their claim must be specifically authorized by statute." (*Id.* at p. 50.) After canvassing various statutes, the court found "no specific statutory authority under which a county may be. compelled to entertain or pay noncontractual claims by private physicians for expenses incurred in providing emergency medical services to indigent residents." (*Id.* at p. 52.)

While *Union of American Physicians* upheld the denial of the physicians' claim, it noted: "The trial court, at an early stage in the proceedings, afforded physicians a broad hint that the ultimate validity of the causes of action now before us lay not in seeking to compel monetary compensation under quasi-contract theories, but in seeking, as interested citizens, to compel the County's compliance with . . . section 17000. We agree; if a county fails to perform its duty, the remedy is not to impose liability for individual claims, but to require it to fulfill its obligations to the indigent, who are the class of persons benefited under section 17000. [Citations.] The fact remains that physicians here have sought to compel reimbursement. The question whether a writ of mandate should issue, on the facts presented, to compel the County's compliance with section 17000 is not before us." (*Union of American Physicians, supra,* 149 Cal.App.3d at pp. 52–53.) Accordingly, *Union of American Physicians* did not present the issue before this court. As we have explained, Fuchino is within the class of people benefited by section 17000, and the question of whether a writ should issue to compel Sacramento County to pay for out-of-county emergency ambulance services pursuant to section 17000 is before us.

## V.

*Sacramento County's Claim of "[U]nworkable" Requirement*

■ Apart from case or statutory law, Sacramento County argues that it would create an "unworkable system" if an indigent's county of residence had financial responsibility for the cost of out-of-county emergency ambulance services. Sacramento County complains that it would need to "process [ambulance] invoices from potentially every county in the state" to which its indigent residents may temporarily travel. The question of whether the requirements of section 17000 are too burdensome is properly addressed not to this court but to the Legislature. " 'To rewrite [a] statute is a legislative, rather than judicial, prerogative.' " (*Peters v. Superior Court* (2000) 79 Cal.App.4th 845, 850 [94 Cal.Rptr.2d 350], quoting *Hofer v. Young* (1995) 38 Cal.App.4th 52, 57 [45 Cal.Rptr.2d 27].)

## DISPOSITION

We reverse the trial court's judgment to the extent it denied Fuchino's petition for writ of mandamus to compel Sacramento County to cover the cost of the emergency ambulance services she received in Monterey County on April 21, 2007. The trial court is directed to issue a writ of mandamus compelling Sacramento County Department of Health and Human Services to

render a decision covering the cost of Beverly Carol Fuchino's Westmed Ambulance Inc. ambulance bill. Fuchino shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Blease, Acting P. J., and Nicholson, J., concurred.

A petition for a rehearing was denied July 14, 2011, and respondents' petition for review by the Supreme Court was denied September 14, 2011, S195395.