[Civ. No. 20642. Third Dist. Apr. 30, 1982.]

COUNTY OF ALAMEDA et al., Plaintiffs and Appellants, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

COUNSEL

Richard J. Moore, County Counsel, and James F. May, Deputy County Counsel, for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Edward P. Hollingshead and Charles C. Kobayashi, Deputy Attorneys General, for Defendant and Respondent.

OPINION

CARR, J.—The County of Alameda (County) filed an action for declaratory relief under Revenue and Taxation Code section 538[1] to test the validity of the representative period designated by defendant State Board of Equalization (Board) for assessing nonscheduled aircraft[2] for the 1980-1981 assessment year. County appeals from the judgment granting Board's motion for summary judgment and denying its cross motion for summary judgment.

The questions presented on this appeal are:

I. Does the Board have the statutory authority to modify the designated representative period by excluding therefrom abnormal or atypical aircraft presence?

---

[1]Section 538 authorizes a declaratory relief action under section 1060 of the Code of Civil Procedure as an alternative to making an assessment in the factual setting before us.

(Except as otherwise provided, all section references are to the Revenue and Taxation Code.)

[2]Generally, nonscheduled aircraft are aircraft individually chartered or aircraft which do not fly on a regularly scheduled basis.

II. Did the Board's choice of a representative period constitute an abuse of discretion?

III. Does the modification unconstitutionally exempt property from ad valorem taxation?

On March 7, 1980, the Board designated the period March 1, 1979, to February 29, 1980, as the representative period for all nonscheduled aircraft, excepting therefrom DC-10 aircraft grounded because of suspension of the DC-10's airworthiness certificate following the Chicago air disaster and aircraft grounded during a general employees' strike. For these two groups of aircraft, the Board modified the designated representative period by excluding therefrom the days the aircraft were grounded and substituting a like number of days from before March 1, 1979. The effect of the modification was to decrease the amount of time such aircraft were in California for assessment purposes.[3] County asserts if the aircraft in question had been assessed using the same representative period designated for all other nonscheduled aircraft, it would have collected approximately $135,000 more in taxes for the 1980-1981 fiscal year.

A motion for summary judgment is properly granted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c.)

The facts here are not in dispute and summary judgment was the appropriate procedure.

We note initially that article XIII, section 1, subdivision (a) of the California Constitution provides: "All property is taxable and shall be assessed at the same percentage of fair market value. When a value standard other than fair market value is prescribed by this Constitution or by statute authorized by this Constitution, the same percentage shall be applied to determine the assessed value. The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value." (See also § 201.) Article XIII, section 14 provides that property is to be assessed "in the county . . . in which it is situated." (See also § 404.) Article XIII, sec-

---

[3]It appears that during the course of this litigation the Board passed a rule, which, inter alia, delineates what constitutes "normally physically present within the state."

tion 2 authorizes the Legislature to exempt personal property from taxation.

I

Revenue and Taxation Code sections 1150-1156 govern the ad valorem taxation of certificated aircraft having a tax situs in multiple jurisdictions. Section 1151 provides: "Certificated aircraft shall be deemed to be situated in this state only to the extent that such aircraft are normally physically present within the state, whether in flight or on the ground. To determine such extent for purposes of property taxation, the allocation formula specified by section 1152 shall be applied."

Section 1152 states: "The allocation formula to be used by each assessor is as follows: [¶] (a) For the 1980-81 fiscal year and fiscal years thereafter, the time in state factor is the proportionate amount of time, both in the air and on the ground, that certificated aircraft have spent within the state during a representative period as compared to the total time in the representative period. For purposes of this subdivision, all time, both in the air and on the ground, that certificated aircraft has spent within the state prior to the aircraft's first revenue flight shall be excluded from the computation of the time in state factor. This factor shall be multiplied by 75 percent. [¶] (b) Arrivals and departures is [*sic*] the number of arrivals in and departures from airports within the state of certificated aircraft during a representative period as compared to the total number of arrivals in and departures from airports both within this state and elsewhere in the representative period. This factor shall be multiplied by 25 percent. [¶] (c) The time in state factor shall be added to the arrivals and departures factor. [¶] (d) The figure produced by application of subdivision (c) equals the allocation to be applied to full cash value to determine the value to which the assessment ratio shall be applied."

Section 1153 then provides a procedure by which the Board shall designate the representative period: "After consulting with the assessors of the counties in which aircraft of an air carrier normally make physical contact, the board shall designate for each assessment year the representative period to be used by the assessors in assessing the aircraft of the carrier."

Essentially the statutory scheme is to provide for county assessors to determine, according to an allocation formula, the amount of aircraft

presence within the state during the taxable year, i.e., the "time in state" factor. The allocation formula has two components: (1) ground time and flight time and (2) aircraft arrivals and departures. (§ 1152.) The "time in state" factor is then applied to the full cash value of the aircraft "to determine the value to which the assessment ratio shall be applied." (§ 1152.)

In California, property is to be assessed as of March 1st of each year for the coming tax year. (§ 722.) In order to make an assessment of aircraft for the tax year July 1980 to June 1981, the value of such aircraft as of March 1, 1980, and the amount of time spent in California during that tax year must be determined. Because the amount of aircraft activity in the coming tax year cannot be determined on March 1st, the Board is authorized to designate a representative period from a prior year which serves as the time frame to be used by county assessors in applying the allocation formula (§ 1153.)

 County first urges the Board is without statutory authority to modify the designated representative period by excluding therefrom periods of atypical or abnormal aircraft presence. We disagree.

Section 1151 states that aircraft shall be deemed to be situated in this state for purposes of property taxation "*only to the extent that such aircraft are normally physically present within the state,* ..." (Italics added.) By this language the Legislature clearly intended to exclude unscheduled aircraft from taxation property present in the state because of an abnormal, unusual, or nonrecurrent event. To accomplish this the representative period to be used as a basis for taxing property must necessarily reflect only normal or typical aircraft activity. The Board is given the power to designate this period; it necessarily follows that it has the further power to exclude from such period abnormal or atypical aircraft activity.

The designation of a representative period from the prior year permits county assessors to approximate in a fair manner the expected aircraft presence for the current year thereby insuring compliance with the constitutional mandate that aircraft with a tax situs in multiple jurisdictions be taxed on an apportioned basis by each jurisdiction only insofar as "the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State." (*Ott v. Mississippi Barge Line* (1948) 336 U.S. 169, 174 [93 L.Ed. 585, 589, 69 S.Ct. 432]; see also *Braniff Airways* v. *Nebraska Board* (1954) 347

U.S. 590, 600 [98 L.Ed. 967, 977, 74 S.Ct. 757].) The Assessor's Handbook 570, Commercial Aircraft Value Allocation (at p. 8) states: "The purpose of a representative period is to obtain air carrier operational data, for as brief a time span as possible, that can reasonably be expected to reflect the average activity of the carrier for the ensuing tax year." The Board's substitution of periods of atypical aircraft presence with periods of typical aircraft presence is consistent with the concept that taxes are to be assessed on the reasonably expected average activity of the carrier.

County urges that section 1152's exclusion of prerevenue flight time from the computation of time in state factor expresses a legislative intent "that all other time is to be included in the allocation formula" under the statutory rule of construction *expressio unius est exlusio alterius* or "where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed."[4] (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537]; see also *State Board of Education* v. *Levit* (1959) 52 Cal.2d 441, 461 [343 P.2d 8].) This, County asserts, is consistent with the legislative history of aircraft assessment and cites to the 1968 Report of the Assembly Committee on Revenue and Taxation which recommended that time in state be discounted to a weighted allocation percentage of 75 percent with arrivals and departures weighted at 25 percent "will encourage the airline industry to repair their aircraft in California because they will no longer be fully taxed on time spent by the aircraft in the state." (4 Assem. Interim. Com. Rep. (1968) No. 22, Revenue and Taxation, A study of Aircraft Assessment in Cal., p. 24.)

We do not equate voluntary grounding time for repair and maintenance with forced grounding time necessitated by governmental intervention and employee strikes. The air carriers in question were not encouraged to remain in Alameda County; they were compelled by factors other than repair, maintenance or lack of passengers.

Moreover, "[l]ike other rules of construction, the maxim *expressio unius est exclusio alterius* gives way where it would operate contrary to the legislative intent to which it is subordinate or where its application would nullify the essence of the statute." (*People* v. *Hacker Emporium, Inc.* (1971) 15 Cal.App.3d 474, 477 [93 Cal.Rptr. 132].)

---

[4]As Board notes, County relies on this rule of statutory construction for the first time on appeal. We deem it proper to address it as County did allege in the trial court, as a general proposition, that the Board had no statutory authority to act as it did.

 In the face of the plain language of section 1151, we cannot imply from the fact of section 1152's preflight exclusion a legislative intent to include all other aircraft presence in the designation of a representative period. Section 1151 expresses a clear legislative intent to tax aircraft "only to the extent that such aircraft are normally physically present within the state, ..." The Board's action in substituting periods of atypical activity with more normal periods of aircraft activity is consistent with that intent.[5]

We note further that the Board's construction of the terms "representative period" and "normally physically present" is consistent with their commonly accepted and understood definitions. This comports with the well established rule of construction that statutes should be construed in accordance with the common or ordinary meaning of the language used. (*Standard Oil Co.* v. *State Bd. of Equalization* (1974) 39 Cal.App.3d 765 [114 Cal.Rptr. 571]; *In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789].)

While it may be true, as County asserts, that the state could have provided for the taxation of aircraft whose presence within the state was atypical without violating pertinent provisions of the federal Constitution, this remedy properly lies with the Legislature, not with the courts. (See generally *Gassman* v. *Governing Board* (1976) 18 Cal.3d 137, 148 [133 Cal.Rptr. 1, 554 P.2d 321]; *Burgess* v. *Board of Education* (1974) 41 Cal.App.2d 571, 581 [116 Cal.Rptr. 183].) Our concern is whether the Board was authorized by statute to act as it did. Our review of that question is governed by the well-established principle that "... the construction of a statute by officials charged with its administration, ... is entitled to great weight." (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]). "[A court] will not, therefore, superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision." (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 832 [27 Cal.Rptr. 19, 377 P.2d 83].) "If reasonable minds may well be divided as to the wisdom of an adminis-

---

[5]By delegating to the Board the duty to designate a representative period that reflects only normal aircraft presence within the state, the Legislature undoubtedly recognized the impossibility of listing the infinite variety of occurrences that might fall within the definition of abnormal or atypical. Doubtless the Legislature also recognized that, because of California's large population and the location of much aircraft industry here, aircraft presence within the state prior to its first revenue flight is a common occurrence. (See *Slick Airways* v. *County of Los Angeles* (1956) 140 Cal.App.2d 311 [295 P.2d 46].) A legislative decision on whether this presence was "normal" within the meaning of section 1151 was therefore appropriate.

trative board's action, its action is conclusive." (*Rible* v. *Hughes* (1944) 24 Cal.2d 437, 445 [150 P.2d 455, 154 A.L.R. 137]; see also *Coast Elevator Co.* v. *State Bd. of Equalization* (1975) 44 Cal.App.3d 576, 586-587 [118 Cal.Rptr. 818]; and *L.A.J., Inc.* v. *State Bd. of Equalization* (1974) 38 Cal.App.3d 549, 553 [113 Cal.Rptr. 319].) ■ We conclude that the Legislature's intent to tax aircraft "only to the extent they are normally present within the state" reasonably implies a power in the Board to substitute periods of atypical and abnormal aircraft activity with equivalent periods of normal aircraft activity.[6]

## II

■ County further contends "the Board did not actually designate a representative period; it used actual time. . . . The period designated by the Board for assessment years 1970-71 through 1979-80 was all time in the prior assessment years. . . ." What County is apparently arguing is the Board's abuse of discretion in selecting the representative period for 1980-1981.[7] Because we have concluded the Board had the implied authority to exclude abnormal or unusual aircraft activity from its designation of a representative period, the narrow question remaining is whether the Board abused its discretion in using the periods in question.

Initially, we note there is no statutory prohibition against designation of the entire year as the representative period. Additionally the county assessors, after consultation with the Board as required by section 1153, had acquiesced in the use of the entire year as the representative period for the prior 11 years. The use of an entire year for nonscheduled aircraft is a reasonable attempt to pick a time period that is likely to reflect the average activity of the carrier for the ensuing tax year. Nor

---

[6]The County contends that (1) section 1151's requirement that the allocation formula in section 1152 "shall be applied" to determine the extent of an aircraft's presence is inconsistent with respondent's position that the Board may define "normally physically present within the state" when selecting a representative period and (2) the exclusion of atypical activity from the representative period modifies the formula set out in section 1152. Both contentions are meritless. Section 1152 clearly states that the computation of the time in state factor is to be determined based on a representative period. As we have previously concluded, the representative period was intended to reflect only typical and normal aircraft presence. Thus it is only the representative period that is modified by the Board, not section 1152's allocation formula.

[7]Respondents note that appellants' argument that a representative period was not designated because actual time was used is raised for the first time on appeal; however, since they did argue below that the period chosen was an abuse of discretion, and that appears to be the substance of appellants' argument in this court, we address their contention.

does County challenge the Board's determination that the 1979 forced strike and forced grounding of DC-10's following the Chicago air disaster were abnormal, atypical or unusual events. The Board's assertion that there were no other strikes or forced groundings in the past 10 years is uncontroverted. Accordingly, we find no abuse of discretion in the time period chosen by the Board as the representative period. (See *L.A.J., Inc.* v. *State Bd. of Equalization, supra*, 38 Cal.App.3d 549, 553.)

### III

■ County next argues the Board's modification of the representative period is unconstitutional as it exempts property from taxation. We are not persuaded.

The Board's modification did not completely exempt grounded aircraft from ad valorem taxation, but rather substituted periods of atypical activity with equivalent periods of typical or normal aircraft activity. To the extent that the Board's rule resulted in a reduction of taxes assessed against air carriers, the substitution of atypical activity for typical activity might be characterized as a partial exemption. However, contrary to County's claim, it is the Legislature and not the Board which decided atypical aircraft presence should not be considered in determining the amount of an aircraft's in-state presence. The Board is given only the responsibility to determine the kinds of aircraft presence that fall outside the scope of "normally physically present within the state." Under article XIII, section 2 of the California Constitution, the Legislature was clearly authorized to permit "exemption" of abnormal or atypical aircraft presence in this state from property taxation.[8]

Moreover, because taxes are to be paid in the current year based upon the amount of an aircraft's presence in some designated representative period drawn from the prior year, the exclusion of abnormal aircraft presence prevents excessive taxation in the current tax year.

---

[8]County's reliance on *Zantop Air Transport, Inc.* v. *County of San Bernardino* (1966) 246 Cal.App.2d 433 [54 Cal.Rptr. 813] is misplaced. In *Zantop* the issue was whether San Bernardino County could tax "flight time" of aircraft traveling outside the county and state consistent with the due process and commerce clauses of the federal Constitution. Here, the issue is not whether it would have been constitutionally proper to tax the grounded airplanes, but whether there was statutory authority for the Board to substitute the periods caused by those forced groundings with periods representing more typical aircraft activity, and whether that substitution violated provisions of the California Constitution.

This assures compliance with the constitutional mandate that the assessed tax in the current year "has relation to opportunities, benefits, or protection conferred or afforded by the taxing State." (*Ott* v. *Mississippi Barge Line, supra*, 336 U.S. 169, 174 [93 L.Ed. 585, 589].) Accordingly, we find there has been no unconstitutional exemption of property from taxation.

The judgment is affirmed.

Blease, Acting P. J., and Sparks, J., concurred.

A petition for a rehearing was denied May 26, 1982, and appellants' petition for a hearing by the Supreme Court was denied July 28, 1982. Broussard, J., did not participate therein.