[Civ. No. 53413. First Dist., Div. Three. Nov. 22, 1983.]

UNION OF AMERICAN PHYSICIANS AND DENTISTS et al.,
Plaintiffs and Appellants, v.
COUNTY OF SANTA CLARA et al., Defendants and Respondents.

**COUNSEL**

Geoffrey V. White and Davis, Cowell & Bowe for Plaintiffs and Appellants.

Howard Hassard, David E. Willett, A. Robert Singer and Hassard, Bonnington, Rogers & Huber as Amici Curiae on behalf of Plaintiffs and Appellants.

Selby Brown, Jr., and Donald L. Clark, County Counsel, Rise J. Pichon, Joanne Hue and Robert J. Menifee, Deputy County Counsel, for Defendants and Respondents.

Lloyd M. Harmon, Jr., County Counsel (San Diego), Phillip L. Kossy, Deputy County Counsel, Alan K. Marks, County Counsel (San Bernardino), Charles J. Larkin, Deputy County Counsel, Dennis A. Barlow, County Counsel (Yuba), John H. Larson, County Counsel (Los Angeles), Daniel D. Mikesell, Jr., Deputy County Counsel, Charles R. Mack, County

Counsel (Yolo), Jan K. Damesyn, Senior Deputy County Counsel, Adrian Kuyper, County Counsel (Orange), John W. Anderson, Deputy County Counsel, James P. Botz, County Counsel (Sonoma), Kathleen Farrelly, Deputy County Counsel, James P. Fox, District Attorney (San Mateo), Christine E. Motley, Deputy District Attorney, Floyd R. B. Viau, County Counsel (Fresno), James B. Waterman, Assistant County Counsel, James H. Angell, County Counsel (Riverside), William C. Katzenstein, Deputy County Counsel, Richard J. Moore, County Counsel (Alameda), Lorenzo E. Chambliss, Deputy County Counsel, Denis A. Eymil, County Counsel (Kings), Ralph R. Kuchler, County Counsel (Monterey), and Jonathan R. Price, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**BARRY-DEAL, J.**—Appellant physicians, Taki N. Anagnoston, Jerrold E. Nadler, and Joseph G. McCormack, together with appellant Union of American Physicians and Dentists, representing about 350 members (collectively physicians), seek to compel respondents Santa Clara County (County), the County board of supervisors (Board), and two County officers (collectively County) to consider various claims and to compensate physicians for the reasonable value of emergency medical services provided to those persons allegedly eligible for county services under Welfare and Institutions Code section 17000.[1] To this end, in 1976 they filed a petition for writ of mandate (Code Civ. Proc., § 1086) and a complaint for declaratory relief.[2]

In 1981, after both sides moved for summary judgment, the trial court rendered judgment in the County's favor. Physicians now contend that it is they, not the County, who are entitled to summary judgment. They assert that, as a matter of law, a county must compensate private physicians who, without any prior agreement, have themselves discharged the county's mandatory duty under Welfare and Institutions Code section 17000 by providing

---

[1] Welfare and Institutions Code section 17000 provides: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."

[2] Physicians also sought monetary relief based on a cause of action for restitution, which was dismissed in 1976 for failure to amend upon demurrer. To dispose of this appeal properly, we amend the judgment of March 10, 1981, to include such dismissal. (*Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 520-524 [322 P.2d 933], disapproved on another ground in *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 900 [157 Cal.Rptr. 693, 598 P.2d 854].)

emergency medical services to indigent residents who could not be safely transferred to county facilities. We hold that applicable law does not require a county to compensate noncontracting private physicians for emergency medical services rendered to indigent residents. We therefore affirm the summary judgment for the County.

*Facts*

The following facts are drawn from the parties' supporting documents.

The County declared that, at all times in question, there was no agreement, express or implied, between the County and any physicians concerning payment for emergency services rendered to indigent residents. The services for which physicians sought compensation were, in fact, provided pursuant to an agreement between the physicians and Wheeler Hospital, whereby they were periodically obligated to be on call for emergency room duty in exchange for hospital staff privileges.

In 1976, the Board resolved to meet its statutory duty under Welfare and Institutions Code section 17000 to provide inpatient emergency care for indigent residents by maintaining a single, centrally located facility in San Jose, the Santa Clara Valley Medical Center (SCVMC). The Board expressly recognized that medically indigent residents in more remote areas could not be safely sent to the SCVMC for emergency care. Nonetheless, it resolved not to contract with private health care providers for emergency care in remote areas,[3] in light of the "independent duty" of private hospitals to provide emergency care,[4] as well as the voluntary undertaking of such care by other private health care providers.

The Board reasoned that such private care, provided either voluntarily or under an independent legal duty, was sufficient to meet the needs of medically indigent residents in remote areas, because the number of such persons was "very small or nonexistent," chiefly due to the expansion of Medi-Cal coverage. Although by ordinance the County determines who is eligible for medical relief under Welfare and Institutions Code section 17000 on a case by case basis, it defines such persons generally as residents who are not

---

[3]The south county area around Gilroy, where Wheeler Hospital is located, is one such remote area. At oral argument, the County conceded that it no longer provides full emergency medical services to indigent residents of this area; it provides only an out-patient facility operating during limited hours.

[4]A licensed hospital with emergency care facilities must provide emergency care to anyone requesting it who is found to require such service, and emergency care must be provided before any determination of financial status. (Health & Saf. Code, § 1317.)

eligible for Medi-Cal or other state or federal medical benefits and who otherwise lack sufficient funds or assets to meet necessary medical costs.[5]

Physicians declared that, prior to the Board's resolution, the County had contracted with private hospitals and physicians to provide emergency medical care to indigent residents in remote areas. Such agreements ceased after the Board's resolution in 1976.

From February 1973 to February 1976, when physicians filed their complaint, they provided emergency medical services to persons who were claimed to be medically indigent residents eligible for county relief under Welfare and Institutions Code section 17000. Such persons were claimed to be medically indigent residents based on an initial investigation and determination by Wheeler Hospital, or by reason of their unpaid bills. Physicians rendered such services with the intent to charge whoever might prove to be ultimately responsible, and they submitted to the County claims for such services as they suspected were rendered to medically indigent residents. The County rejected all such claims, without investigation, on the ground that there was no contract authorizing payment.

*Discussion*

Both sides sought summary judgment, each representing thereby that there was no material issue of fact to be tried. Although such representation is not binding on the court (*Borges* v. *Home Insurance Co.* (1966) 239 Cal.App.2d 275, 276 [48 Cal.Rptr. 540]), it is also apparent that there is no real triable issue of material fact. We conclude that the summary judgment procedure was appropriate. (*County of Alameda* v. *State Bd. of Equalization* (1982) 131 Cal.App.3d 374, 378 [182 Cal.Rptr. 450].) The question remains whether the trial court properly determined that the County was entitled to judgment as a matter of law. (Code Civ. Proc., § 437c.)

Physicians' theory of recovery is based on principles set forth in sections 113 and 114 of the Restatement of Restitution, which allow recovery of the reasonable value of necessary aid which a plaintiff has provided, unofficiously and with the intent to charge, to a third person to whom the defen-

---

[5] 1976 legislation did significantly expand Medi-Cal coverage to include medically indigent adults, who were therefore not entitled to medical relief under Welfare and Institutions Code section 17000. (See Welf. & Inst. Code, § 14005.4, as amended by Stats. 1976, ch. 126, § 7, p. 200, eff. May 5, 1976; cf. Welf. & Inst. Code, § 14005.4, as amended by Stats. 1974, ch. 1240, § 1.6, p. 2685, eff. Sept. 23, 1974.) Such expanded Medi-Cal coverage, however, has recently been eliminated effective January 1, 1983, transferring back to the counties the greater burden of treating medical indigents. (See, e.g., Welf. & Inst. Code, §§ 14005.4, 14052.)

dant owes a legal duty to supply such aid. Section 113[6] permits recovery for necessaries provided in the face of the defendant's breach of duty, while section 114[7] allows recovery for emergency aid provided regardless of the defendant's conduct. (Rest., Restitution, § 113, coms. a, c, § 114, com. b.)

The problem is that physicians are invoking these principles to recover from a county, a state subdivision exercising within its boundaries the sovereignty of the state. (*Griffin* v. *County of Colusa* (1941) 44 Cal.App.2d 915, 920 [113 P.2d 270].) Their claim must therefore rest on more than principles of restitution; their claim must be specifically authorized by statute.[8] (*Ibid.*; *Head* v. *Wilson* (1939) 36 Cal.App.2d 244, 253 [97 P.2d 509]; see *Arnelle* v. *City and County of San Francisco* (1983) 141 Cal.App.3d 693, 696-697 [190 Cal.Rptr. 490].) ■ Conversely stated, a county is not liable to pay any claim for services rendered except those whose payment is authorized by law. (*Irwin* v. *County of Yuba* (1898) 119 Cal. 686, 690 [52 P. 35]; *Gibson* v. *County of Sacramento* (1918) 37 Cal.App. 523, 529-530 [174 P. 935]; see Gov. Code, § 29600.)

■ Physicians contend that Welfare and Institutions Code section 17000[9] authorizes their claims. Obviously, section 17000 does not expressly authorize the payment of compensation for noncontractual emergency relief provided to indigent residents. Section 17000 does impose a mandatory duty (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 676 [94 Cal.Rptr. 279, 483 P.2d 1231]) of the type contemplated by sections 113 and 114 of the Restatement of Restitution. (Rest., Restitution, § 113, com. b, p. 466, § 114, com. d, p. 481.) However, the establishment of such duty does not itself constitute

---

[6]"A person who has performed the noncontractual duty of another by supplying a third person with necessaries which in violation of such duty the other had failed to supply, although acting without the other's knowledge or consent, is entitled to restitution therefor from the other if he acted unofficiously and with intent to charge therefor." (Rest., Restitution, § 113, p. 464.)

[7]"A person who has performed the duty of another by supplying a third person with necessaries, although acting without the other's knowledge or consent, is entitled to restitution from the other therefor if

"(a) he acted unofficiously and with intent to charge therefor, and

"(b) the things or services supplied were immediately necessary to prevent serious bodily harm to or suffering by such person." (Rest., Restitution, § 114, p. 476.)

[8]To the extent that governmental liability depends largely upon the particular statutory language involved (see Annot. (1934) 93 A.L.R. 900, 901), we find those out-of-state decisions relied on by physicians to be distinguishable from the present case.

[9]Physicians' complaint included causes of action based on a separate duty set forth in Health and Safety Code section 1454. Physicians have not discussed this statute, however, and we deem the appeal abandoned as to these causes of action. (See *Conner* v. *Dart Transportation Service* (1976) 65 Cal.App.3d 320, 323 [135 Cal.Rptr. 259].)

the specific authority necessary to maintain a quasi-contract cause of action against a county.[10]

Physicians rely primarily on *Washington Township Hosp. Dist.* v. *County of Alameda* (1968) 263 Cal.App.2d 272 [69 Cal.Rptr. 442], a case which only serves to illustrate the need for more explicit statutory authorization to support a quasi-contract claim against a county. In that case, a hospital was allowed to recover the cost of emergency care provided to a prisoner under Government Code section 29602, a statute which does not impose a duty, but specifies that certain necessarily incurred expenses are county charges. (*Washington Township Hosp. Dist.* v. *County of Alameda, supra,* 263 Cal.App.2d 272, 276, 279-281.)

Physicians argue that Government Code section 29607[11] provides the specific authority for their quasi-contract claims. This statute appears to be the only applicable authorization for counties to pay for expenses incurred in providing emergency medical care to indigent residents.[12]

However, assuming arguendo that Government Code section 29607 may properly be construed to authorize counties to pay quasi-contract as well as contract claims, it clearly cannot be construed to *require* counties to pay noncontractual claims. Emergency medical expenses incurred on behalf of

---

[10]We note that Welfare and Institutions Code section 17000 cannot reasonably be construed to impose a duty so absolute as would necessarily imply an obligation on the counties' part to pay for all emergency medical services provided to indigent residents. The duty itself arises only "when such persons are not supported and relieved" by others, and each county has a broad range of discretion within which it may properly act in discharging its duty. (Welf. & Inst. Code, §§ 17000, 17001; *Mooney* v. *Pickett, supra,* 4 Cal.3d 669, 678-679; *Berkeley* v. *Alameda County Bd. of Supervisors* (1974) 40 Cal.App.3d 961, 971 [115 Cal.Rptr. 540].)

[11]Government Code section 29607 provides that: "When authorized by the board of supervisors, expenses incurred by county authorities pursuant to Section 1451.5 of the Health and Safety Code or for temporary, emergency, or extended care or treatment of indigent patients of the county by local hospitals or any hospital maintained and operated by any county, the State, any state college, university, or other institution supported in whole or in part by taxation or exempted in whole or in part from taxation are county charges."

[12]Government Code section 29607 was originally joined with Government Code section 29606 as former Political Code section 4307, subdivision 7. For this reason, we construe these statutes together and conclude that the broader language of section 29606 is qualified in this case by the more specifically applicable language of section 29607. Government Code section 29606 provides: "The necessary expenses incurred in the support of the county hospitals, almshouses, and the indigent sick and otherwise dependent poor, whose support is chargeable to the county, are county charges."

indigent residents are county charges only "[w]hen authorized by the board of supervisors, . . ."[13]

Thus, there is no specific statutory authority under which a county may be compelled to entertain or pay noncontractual claims by private physicians for expenses incurred in providing emergency medical services to indigent residents.[14] As the affidavits indisputably establish that physicians have no claim under contract, either express or implied in fact, we conclude that the trial court properly determined that the County was entitled to judgment as a matter of law.[15]

Physicians have failed to establish any clear, present, and beneficial right to recover money for services rendered, and the trial court therefore properly denied their petitions for writ of mandate. (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].) ■ The trial court's failure to issue a declaratory judgment was harmless error, as the declaration would have necessarily been adverse to physicians. (*California Chiropractic Assn.* v. *Board of Administration* (1974) 40 Cal.App.3d 701, 704 [115 Cal.Rptr. 286]; *Haddad* v. *Electronic Production & Development, Inc.* (1963) 219 Cal.App.2d 137, 141 [33 Cal.Rptr. 89].)

Amicus curiae, the California Medical Association, urges that the question of physicians' right to reimbursement should not obscure the matter of most substantial concern, the County's unreasonable abandonment of a segment of its indigent population. The trial court, at an early stage in the proceedings, afforded physicians a broad hint that the ultimate validity of the causes of action now before us lay not in seeking to compel monetary

---

[13]It is questionable whether the Board even has the power to authorize the payment of physicians' noncontractual claims. The Board is permitted to contract with private physicians. (Health & Saf. Code, § 1451, subd. (d).) It is also permitted to authorize noncontractual claims from out-of-state facilities (Health & Saf. Code, § 1451.5), and must authorize the noncontractual claims of other counties. (Health & Saf. Code, § 1475.) Still, there is no provision permitting or requiring it to authorize the noncontractual claims of private physicians.

[14]Welfare and Institutions Code section 16717, an urgency measure effective September 30, 1982, provides, inter alia, that ". . . [a] county shall not be obligated to pay for health care services unless pursuant to a contract or the county has specifically authorized such services and agreed to payment. . . ." Amici curiae suggest that this recent legislation continues preexisting law under Government Code section 29607. We note simply that it is not inconsistent with our conclusion.

[15]For the same reason, we also conclude that there is no merit to physicians' suggestion that the trial court erroneously sustained the demurrer to their cause of action for restitution. Because there was no basis for a quasi-contract claim, the court could properly base its ruling on the fact that there was no alleged contract, express or implied in fact.

compensation under quasi-contract theories, but in seeking, as interested citizens, to compel the County's compliance with Welfare and Institutions Code section 17000. We agree; if a county fails to perform its duty, the remedy is not to impose liability for individual claims, but to require it to fulfill its obligations to the indigent, who are the class of persons benefited under section 17000. (See *Mooney* v. *Pickett, supra,* 4 Cal.3d 669, 678-679; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 76-77, pp. 3852-3854.) The fact remains that physicians here have sought to compel reimbursement. The question whether a writ of mandate should issue, on the facts presented, to compel the County's compliance with section 17000 is not before us.

The judgment is affirmed.

Scott, Acting P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied December 22, 1983, and appellants' petition for a hearing by the Supreme Court was denied February 23, 1984. Reynoso, J., was of the opinion that the petition should be granted.