TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 93-1001 |
| of | : | |
| | : | May 13, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE PHILLIP S. CRONIN, COUNTY COUNSEL, FRESNO COUNTY, has requested an opinion on the following question:

If a county holds a national pollution discharge elimination system permit, may a member of its board of supervisors who receives a significant portion of his or her income from the county be a member of a regional water quality control board?

CONCLUSION

If a county holds a national pollution discharge elimination system permit, a member of its board of supervisors who receives a significant portion of his or her income from the county may not be a member of a regional water quality control board.

ANALYSIS

The Porter-Cologne Water Quality Control Act (Wat. Code, §§ 13000-14958; hereinafter "Act")[1] was enacted in part to implement the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1387), commonly referred to as the Clean Water Act. Under the federal and state legislation, California is allowed to issue national pollution discharge elimination system (hereafter "NPDES") permits. (§§ 13370-13389.) The permit program primarily regulates the discharge of pollutants and dredged or fill material into navigable waters and the use and disposal of sewage sludge.

The Act provides "that the statewide program for water quality control can be best effectively administered regionally, within a framework of statewide coordination and policy" (§

---

[1]All unidentified section references are to the Water Code.

13000) and that "the state board and each regional board shall be the principal state agencies with primary responsibility for the coordination and control of water quality" (§ 13001). The "state board" is the State Water Resources Control Board (§§ 174-188.5) which consists of five members appointed by the Governor. There are nine regional water quality control boards (§§ 13200-13284) located throughout the state, each consisting of nine members appointed by the Governor.

The question presented for resolution concerns the membership composition of the regional boards. Section 13201 provides:

"(a) There is a regional board for each of the regions described in Section 13200. Each board shall consist of the following nine members appointed by the Governor, each of whom shall represent and act on behalf of all the people and shall reside or have a principal place of business within the region:

"(1) One person associated with water supply, conservation, and production.

"(2) One person associated with irrigated agriculture.

"(3) One person associated with industrial water use.

"(4) One person associated with municipal government.

"(5) One person associated with county government.

"(6) One person from a responsible nongovernmental organization associated with recreation, fish or wildlife.

"(7) Three persons not specifically associated with any of the foregoing categories, two of whom shall have special competence in areas related to water quality problems.

"(b) All persons appointed to a regional board shall be subject to Senate confirmation, but shall not be required to appear before any committee of the Senate for purposes of such confirmation unless specifically requested to appear by the Senate Committee on Rules.

"(c) Insofar as practicable, appointment shall be made in such manner as to result in representation on the board from all parts of the region.

"(d) Notwithstanding subdivision (a), if appointment cannot be made of persons associated with county government because of the requirements of Section 13388, those appointments may be made of persons not specifically associated with any category."

Section 13388 in turn states:

"Notwithstanding any other provision of this division or Section 175, no person shall be a member of the state board or a regional board if he receives or has received during the previous two years a significant portion of his income directly or indirectly from any person subject to waste discharge requirements or applicants for waste discharge requirements pursuant to this chapter. . . ."

Pursuant to section 13201, subdivision (a)(5), one member of each regional board is to be "associated with county government" unless the person receives "a significant portion of his income directly or indirectly from any person subject to waste discharge requirements or applicants for waste discharge requirements" (§ 13388), in which case the appointment "may be made of persons not specifically associated with any category" (§ 13201, subd. (d)). How are these statutes to be interpreted with respect to a person who is a county supervisor and receives a significant portion of his or her income from the county? We conclude that the person may not serve on a regional board.[2]

Section 13388 implements a federal requirement "that no board or body which approves permit applications or portions thereof shall include, as a member, any person who receives, or during the previous two years received, a significant portion of his income directly or indirectly from permit holders or applicants for a permit." (33 U.S.C. § 1314(i)(2)(D).)

The definition of "significant portion of his income" is defined in the California Code of Regulations, title 23, section 644.2, as follows:

"The term `significant portion of his income' shall mean ten percent of gross personal income for a calendar year except that it shall mean 50 percent of gross personal income for a calendar year if the recipient is over 60 years of age and is receiving such portion pursuant to retirement, pension or similar arrangement."[3]

Since a county is a "person" for purposes of the Act (§ 13050, subd. (c) ["`Person' includes any city, county, district . . ."]) and would be an "applicant" for its NPDES permit, a county supervisor who receives a "significant portion of his income" from a county holding an NPDES permit would be prohibited from being a member of a regional board under the terms of section 13388.

Despite the plain, prohibitory language of section 13388, it has been suggested that a county supervisor would come within the exception to the statute's prohibition by virtue of an administrative regulation (Cal. Code Reg., tit. 23, § 644.3; hereinafter "Regulation 644.3") issued by the State Water Resources Control Board. Regulation 644.3 states:

"The terms `persons subject to waste discharge requirements' and `applicant for waste discharge requirements' shall apply only to persons regulated under Chapter 5.5, Division 7, California Water Code (NPDES permits) but shall not include any department or agency of the state government including the University of California and the State University and Colleges."[4]

---

[2]We are informed that eight counties are not "subject to waste discharge requirements or applicants for waste discharge requirements" (§ 13388); hence, the representative of one of these counties, whether a supervisor or someone else associated with the county, would not be disqualified for receiving a significant portion of his or her income from the county, under the terms of the statute.

[3]This definition parallels the definition found in the federal regulations for state issued NPDES permits. (40 C.F.R. § 123.25(c)(1)(ii) (1992).)

[4]The parallel federal regulation provides:

"`Permit holders or applicants for a permit' does not include any department or agency of a State government, such as a Department of Parks or a Department of

This suggestion is predicated upon the premise that a county is an "agency of the state government" within the meaning of Regulation 644.3. We reject the suggestion for a number of reasons.[5]

First of all, a county does not fall within the purpose of the exemption. Shortly after the enactment of the federal law, the United States Environmental Protection Agency, the agency responsible for administering the law, issued an explanatory statement dated February 14, 1973, which included the following:

> "(a) State employment. Many State facilities will require Section 402 discharge permits. If the term `permit holders or applicants for a permit' included State agencies or facilities, all State officials and employees would then be disqualified from membership on State boards. Since the State is to administer the permit program, it would be impossible to apply an interpretation of the statute requiring that a State employee be disqualified from board membership where his only `conflict' is the receipt of income from the State. Therefore, State departments and agencies are not deemed to be permit holders or applicants for a permit for purposes of this provision. This position is set forth in Section 124.94(c) of the Guidelines.

> "(b) Municipal employment. Most, if not all, municipalities will have sewage treatment works and other discharges subject to permitting under Section 402. The rationale above relating to State agencies or departments does not apply to municipalities. Municipalities are subject to regulation under the permit program in the same manner as other point source dischargers. They, unlike States, however, have no responsibility under Section 402 to administer the program."

Accordingly, the federal exemption for state officers and employers was intended to apply only to the state agency given the responsibility for issuing the NPDES permits. It was not intended to apply to any other agency (however denominated) having no enforcement responsibilities. In short, a county having a single member on a nine person regional board is not such a "state agency." As between "state employment" and "municipal employment" described in the federal explanatory material, a single county representative would fall within the rationale for "municipal employment" for purposes of the exemption. The 1973 federal explanation sets forth the historical circumstances with respect to the exemption for "state agencies" and provides an authoritative guide for construing the exemption. (See, e.g., *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 460; *Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d at 1387.)

Furthermore, section 13201 itself, in setting forth the membership composition of the regional boards, contemplates the possibility that a conflict may exist with respect to county representation. As previously quoted, subdivision (d) provides:

_____

Fish and Wildlife." (40 C.F.R. § 123.25(c)(1)(iii) (1992).)

[5]Of course, "`"[a]dministrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations."'" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389.) Such treatment is unnecessary here since we find that a county does not come under the exemption provisions contained in Regulation 644.3.

"Notwithstanding subdivision (a), if appointments cannot be made of persons associated with county government because of the requirements of Section 13388, those appointments may be made of persons not specifically associated with any category."

Harmonizing this language with that of section 13388 and giving effect to each (see, e.g., *California Mfgrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844; *Moyer* v. *Workman's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230), we find that a county would not come within the exception for "any department or agency of the state government" as provided in Regulation 644.3. We view the regulation as consistent with the two statutory provisions.

Additionally, both the federal government and the State Water Resources Control Board have interpreted federal and state law respectively to *exclude* a county officer from serving on a regional board if the officer falls within the prohibitory language of section 13388 and its federal counterpart. These administrative interpretations may be relied upon to construe the language of both the statutes and implementing regulations. (See *E.I. Du Pont de Nemours & Co.* v. *Train* (1977) 430 U.S. 112, 134; *Dix* v. *Superior Court, supra*, 53 Cal.3d at 460; *Industrial Indemnity Co.* v. *City and County of San Francisco* (1990) 218 Cal.App.3d 3d 999, 1009; *Norian* v. *Department of Administration* (1970) 11 Cal.App.3d 651, 655.)

Finally, although a county is a subdivision of the state (Gov. Code, § 23002; *Union of American Physicians & Dentists* v. *County of Santa Clara* (1983) 149 Cal.App.3d 45, 50) and is sometimes described as a "state agency" (see, e.g., *County of Los Angeles* v. *Graves* (1930) 210 Cal. 21, 25; *Bryant* v. *County of Monterey* (1954) 125 Cal.App.2d 470, 474) in our view it is not a "department or agency of state government" within the meaning of Regulation 644.3. A county is also a unit of *local* government and a *local* agency in many contexts. (See, e.g., Gov. Code, §§ 25003, 50001; 20 Ops.Cal.Atty.Gen. 69, 70 (1952).) As previously quoted, the language of the counterpart federal regulation exempts "any department or agency of a State government, such as a Department of Parks or a Department of Fish and Wildlife." (40 C.F.R. § 123.25(c)(1)(iii) (1992).) A county is not similar to the examples set forth in the federal regulation. Hence, a county would not survive the application of the rule of statutory interpretation known as *ejusdem generis* (see *Harris* v. *Capitol Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160 ["`". . . general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated"'"]) in interpreting the federal regulation.

If each county had the duty to administer the federal law, a reasonable argument could be made that a county was a "state agency" for purpose of the NPDES permit program. However, such is not the case. Counties have at most a single member on each of the nine regional boards, the same as do "municipal corporations." In our view, such potential limited membership does not elevate a county to the status of an "agency of the state government" for purposes of Regulation 644.3. (Compare *Watson* v. *Los Altos School Dist.* (1957) 149 Cal.App.2d 768, 772.)

In sum, the federal law, which the Act is intended to implement, exempts from its conflict of interest provisions only representatives of the agency which in fact administers the NPDES permit program, in our case the state and the regional boards. This is evident from the federal regulations and their administrative interpretation. Since California law is intended to parallel the federal law, a county is not an "agency of the state government" for purposes of Regulation 644.3.[6]

---

[6]Insofar as it is urged that the same interpretation should be given to section 13388 as given to the Political Reform Act of 1974 (Gov. Code, §§ 81000-91015) which excludes income received

Accordingly, we conclude that if a county holds an NPDES permit, a member of its board of supervisors who receives a significant portion of his or her income from the county may not be a member of a regional water quality control board.

\* \* \* \* \*

---

from a public entity for conflict of interest purposes (Gov. Code, § 82030, subd. (b)(2)), we believe that such suggestion is more properly directed to Congress and the Legislature than to this office. The federal law does not distinguish between income received from "public" as opposed to "private" NPDES permit holders.